## CHEATHAM V. WILBER, ET AL.

*1. CONTRACT:* RECIPROCAL CHARACTER: CONSTRUCTION. A contract should not be so construed as to destroy its reciprocal character, or leave its enforcement to the option of one party, to the damage and detriment of the other.

*2. ——:* DILIGENCE: DEFENSE. Under a contract stipulating for the deposit of evidences of indebtedness with a third party until the title to property for which they were given has been made good, the debtor will not be permitted to stand idly by and see the property carried off by a stranger without in any manner asserting his legal rights, and when suit is brought on the instruments so deposited. plead such trespass as a defense to the action.

*3. INSTRUCTIONS:* ERROR: WHEN REVIEWED. Alleged error in the giving or refusing an instruction will not be reviewed by the Supreme Court, unless all the instructions given by the court on the same branch of the case are embraced in the record.

*4. ——:* EXCEPTION: WHEN TAKEN. Appellate courts will not consider exceptions to instructions which were not taken at the time they were given, or at least before verdict unless further time has been given by the court.*

## *Appeal from Yankton County District Court.*

ON the 23d day of March, 1874, defendant Wilber executed and delivered to plaintiff one promissory note for $150, due July 15, 1874, and one order drawn on defendant Marsh for $150, payable ten days after date. The order was accepted by Marsh, who also signed the note as guarantor.

This suit is brought to recover upon these instruments. The consideration was the transfer by Cheatham to Wilber, of certain horses, vehicles, &c., used on a stage line in the State of Nebraska. The execution and delivery of the note and order are admitted, and defendants rest their defense mainly on a certain contract, subsequently entered into by and between Cheatham and Wilber, and which is in the words and figures following, viz.:

---

*Since this decision was rendered the Legislature has changed the rule by a provision in section 249, Code of Civil Procedure, which reads as follows: " Exceptions to the giving or refusing any instruction or to its modification or change may be taken at any time before the entry of final judgment in the case."

                                                            REPORTER.

"YANKTON, March 30, 1874.

"It is hereby understood and agreed by and between C. Cheatham and R. H. "Wilber, of the State of Nebraska, that one order on James Marsh for one hundred "and fifty dollars, payable to said Cheatham, and one note for one hundred and "fifty dollars, payable to said Cheatham, and both signed by said R. H. Wilber, "shall be deposited with D. T. Bramble, of the city of Yankton, upon the follow- "ing conditions: If the said Cheatham shall make the title good to seven horses, "two spring wagons, one buckboard, two set of double harness, and one set of "single harness, as described in a bill of sale under date of March 17th, 1874, from "P. Jones to said Cheatham, and since sold by said Cheatham to said Wilber, and "which property is claimed by Clarence VanTassel, of the said city of Yankton, "then the said order and note shall be delivered to said Cheatham, otherwise to "said Wilber." (Signed.) "C. CHEATHAM, "R. H. WILBER."

Defendants also allege in their answer false and fraudulent representations by Cheatham made in the transaction; failure of consideration, and property in VanTassel. They also plead a counter claim of fifty-seven dollars, being, as alleged, ten dollars paid on the order, and money paid to other parties to discharge liens on the property transferred, for keeping, etc., all of which is denied by plaintiff in his replication. The above contract is admitted, and referred to in the pleadings by both parties, although not correctly set out by either. The cause was tried to a jury, and a verdict returned for plaintiff. Motions in arrest of judgment, and to set aside the verdict and for a new trial were made and overruled, and judgment rendered for plaintiff. Defendants appeal.

*G. C. Moody* and *Oliver Shannon*, for appellants.

The plaintiff was not the owner and *holder* of the note and order sued upon when he brought this action. They had been deposited by agreement with D. T. Bramble to be retained by him until the plaintiff should *make the title good* to the property in dispute for which the note and order had been made, and which property the plaintiff admitted *in the agreement*, was claimed by VanTassel. Now, certainly this agreement meant *something*, and we submit it meant that before plaintiff should have the right to the *possession* of the note, and therefore before any right of action could accrue to

him he must relieve and discharge this property from the claim of VanTassel; and if VanTassel brought suit to recover the possession, he (plaintiff) must successfully defend the title, or if he took possession without suit, as he did, plaintiff must recover the same.   In other words, having warranted title by the sale he took upon himself the active burden and expenses of establishing and defending such title. This could only be done successfully, and he could only make his title good against VanTassel's *claims* by either buying him off, or by action in which VanTassel was a party.   Any other construction of the instrument would make it simply nonsense and mean nothing; for if this question could be tried, and the title made good against VanTassel's claims, in a suit in which VanTassel was not a party, then the agreement had no force whatever; for in a suit by Cheatham upon the note and order the defendants could set up want of consideration and prove that Cheatham had no title that was in VanTassel.   Courts cannot thus ignore the express contracts of parties, and say they impose no obligation when the party has expressly taken upon himself the obligation of doing something, as in this case.   It is not an answer to say that Cheatham fulfilled his contract by showing *in this case* that he had a good title to the property as against VanTassel, for this puts the burden upon Wilber of doing precisely what, by the agreement, Cheatham agreed to do, to-wit: bring a suit against VanTassel or do some other act to make Cheatham's title good to said property.   VanTassel took possession and retains it; and if Wilber is compelled to pay this note and order he still will be obliged, in order to make himself whole, to bring suit against VanTassel and show that Cheatham's title was *a good one*, precisely what Cheatham in the agreement was to do before he could get possession of the note and order at all, and therefore before he could sue upon them.   Therefore the instruction asked for was proper and ought to have been given.   But the instruction asked for was good law, pertinent and applicable to the case, even if it was not a condition precedent that Cheatham should make his title good against VanTassel's claims, for certainly it was

necessary, for the jury to be satisfied that Cheatham had made his title good to this property, either in this suit or some other way, before he could recover.  And it was error to refuse it in any view that can be taken of the agreement.

Again, there is an entire failure of proof.  The plaintiff alleges one contract, and another and entirely different contract is shown.  There was no amendment or offer to amend the complaint to conform to the proof.

It was clear error to exclude the proof of lien against this property.  And anybody who knew the facts could as well testify thereto as the *station keeper*.

If this written agreement is ignored as plaintiff claims, and the court held it should be, still the facts remain that the property for which the note and order were given, was sold by Cheatham to Wilber, that Cheatham warranted the title to Wilber, and if liens existed against it which Wilber was compelled to pay before he could get possession, the amount which he paid would be a valid counter claim against the amount due on the note and order.   And such counter claim was plead—was offered to be proven, but all evidence thereof was excluded unless we would produce one particular witness to prove it, to-wit: the *station keeper*, although a hundred others might have known the fact just as well, and could testify thereto just as positively.

*Gamble Bros.* and *Powell*, for appellee.

This action was properly brought in the District Court. The plaintiff was not obliged to commence any separate action or actions to determine his rights in the premises, or to settle the title to the property in question, before recovering on the note and order in suit.   He may " unite in the same " complaint several causes of action, whether they be such as " have been heretofore denominated legal or equitable, or " both, where they all rise out of the same transaction or " transactions connected with the same subject of action." (Code of Civil Procedure, § 120.)   The subject of this action was the note and order sued upon.   The contract of March

30, 1874, is a transaction connected with the same subject, to-wit: whether there is or is not any consideration for the note and order sued upon, which goes to the foundation of the cause of action.

But even if there was an improper joinder of different causes of action in this case, an objection thereto came too late upon the trial. If several causes of action have been improperly united, objection for such reason must be raised either by demurrer (Sec. 97, sub. 5, Code of Civil Procedure) or by answer. And if such objection is not then taken it is forever waived. (Ibid, § 101.) The defendants did not demur and raised no such issue in their answer. The defendants had full notice of what the plaintiff claimed set out in the complaint. They answered on the merits, setting up a failure of consideration for the reason the plaintiff was not the owner of the property in question, and that VanTassel was the owner thereof. The issue as to VanTassel's title was voluntarily raised by defendants' answer. The Judge below properly overruled the defendants' first objection to the reception of the evidence on the trial, and properly allowed the plaintiff to introduce evidence on all the issues in the case. Besides the defendants voluntarily called VanTassel and other witnesses to prove his title to the property and thereby defeat the plaintiff's recovery. The jury, after hearing all the evidence on the issues, found for the plaintiff on all the issues:—that VanTassel had no title as against the plaintiff, and that the plaintiff had made good his title to the property.

The defendants had no right to complain in the middle of the trial and avoid the trial of issues they had voluntarily raised, much less could they do so at the close of the testimony which they had voluntarily submitted in the form of a request to charge the jury, or otherwise, which request was properly refused for the above reasons. Besides the whole question raised in the request was fully and fairly submitted to the jury, both as to whether the plaintiff had made good his title to the property, or what was the same—the validity of VanTassel's title to the property, as against the plaintiff. See " Notes of Charge."

The Judge properly refused to allow the witness VanTassel to answer the question—"How long did you continue to own the property, etc." The question was clearly leading and improper, and assumed as a fact a leading issue in the case, to-wit: the ownership of the property. The court allowed all the facts and circumstances attendant upon the witness's alleged purchase and ownership to be given in evidence, but properly refused this manner of examination. No evidence was excluded as to VanTassel's title and ownership, and the matter was fairly submitted to the jury, both at this time on the trial and also again in the Judge's charge. (1 Greenleaf's Evidence, § 434 and 434 a*; 2 Phillips' Evidence, page 889*; 2 Phillips' Evidence, page 889, note 572.) The defendants offered in evidence the contents of a letter alleged to have been written by the plaintiff's vendor to the plaintiff, and also offered to prove declarations of said vendor, before the sale and while in possession, to third parties. The evidence in both instances was properly excluded by the court. The declarations of a former owner of chattels are not admissible in evidence, either to defeat or establish the title of the same in his vendee. The rule is the same whether made before or after the vendor parted with the possession and title. (*Page v. Cagwin*, 1 Hill, 379; *Wordel v. Parmlee*, 1 N. Y., 519; 2 Wait's Law and Practice, 376 and 1168; *Cahoon v. Marshall*, 25 Cal., 197 at 202; *Hurd v. West*, 7 Cowen, 752 at 759; *Donaldson v. Johnson, et. al.*, 2 Pinney, 482 at 486; *Bogart, et. al. v. Philips*, 14 Wis., 88 at 95.) The evidence offered by the defendants in support of their alleged counter claim was properly excluded. The alleged payment to the station keeper, McCleggett, was for an alleged lien or incumbrance on the horses as set up in defendants' answer. The defendants before they could recover on their counter claim were obliged to prove by legal and sufficient evidence:—

1. That the amount claimed to be set off was actually due the station keeper; and

2. That the said station keeper actually had a lien for the amount due under the laws of the State of Nebraska, or by mortgage or otherwise.

The plaintiff was clearly in no manner bound by the fact that the defendant was compelled to pay the station keeper $25 to get possession of the horse, unless that was the amount due him and that he had a lien therefor, and for the same reason what it was worth to keep the horse and the time it was kept there, was improper evidence for the jury. The fact that the station keeper claimed a certain amount due is clearly hearsay. The plaintiff objected to the reception of such evidence unless it was followed up by proof of the amount due by some one who knew the fact, and also by proof of a lien. This the defendants neglected and refused to do, and the court thereupon excluded the evidence. The court had a clear right to compel the defendants to include in their offer sufficient and competent evidence to support their counter claim, and if they fail to do so to exclude the part offered entirely. (1 Phillips' Evidence, 732,* note 195; 1 Phillips' Evidence, 737,* note 196.) *There is no error* in the charge of the Judge; but even if there was, such error is not before this court for review. The record discloses that no exception or notice of exception was taken to the charge on the trial, or before verdict, and none even was suggested to the court until nine days after the jury had rendered their verdict and been discharged. Such offered exception came too late and can in no manner bring the charge up to this court for review.

An exception to the Judge's charge should be made immediately upon its delivery, *and in all cases must* be made before the jury have delivered their verdict. To this rule there is certainly no exception either at common law or under our Code, and the same universal rule prevails in all the " Code " States, as far as we can find. (Code Civil Procedure, D. T., § 217; Code Civil Procedure, N. Y., § 264; *Lanouse v. Barker*, 7 Johnson, 312*; *Life & Fire Ins. Co. v. Mechanics Ins. Co.*, 7 Wend., 31; *Camden, etc., R. R. Co. v. Belknap*, 21 Wend., 354 at 359; *Greegs v. How*, 31 Barb., 100; *Boran v. Martin*, 2 Pinney, Wis., 401; *Hicks v. Town of Marshall*, 24 Wis., 139; Revised Statutes of Wis., 1858, chap. 132; *Hicks v. Coleman*, 25 Cal. at 146; *Brown v. Hurch*, 3 Neb., 353 at 356; *Doe v.*

*Brown*, 6 Ohio St., 12; *Kline, et. al. v. Wayne, Hayne & Co.*, 10. Ohio St., 221; *Snyder v. Eldridge*, 31 Iowa, 129; *Armstrong v. Pierson*, 15 Iowa, 476; *State v. Clark*, 37 Vermont, 471; Estus' Pleadings, page 502, and cases cited.) The only cases in which exceptions are allowed after trial are on trials by the court or referees and without a jury. (Code Civil Procedure, D. T., § 220; Code Civil Procedure, N. Y., § 268.) And in such cases exceptions after trial are only allowed to the findings of fact and conclusions of law. Error committed at such trials must be excepted to at the time. The intention of the Code being to give the right of exception afterwards when it cannot be done at the trial, for under the Code no opportunity is allowed to except to such findings of fact and conclusions of law till after trial. (*Hunt v. Bloomer*, 13 N. Y., 341 at 342; *Johnson v. Whitveck*, 13 N. Y., 344 at 347.) But even if the Judge's charge was properly before this court for review there is clearly no error in the charge. Only that part of the charge which was reduced to writing is here. What is not here is presumed to be correct and to explain the part that is here. None of the testimony of the witnesses on the trial appears in the bill of exceptions or case. The charge is presumed to be made on the facts, and presumed to properly apply to those facts in evidence, unless the contrary appears from the case here. And the testimony of the witnesses not appearing in the case the defendants cannot go behind the charge and insist there is error in the charge on the facts in evidence. Besides, the Judge's charge could not have misled the jury. It states briefly certain facts in evidence and insisted upon by the parties. The Judge then reads and states the statute just as it is, without a word of alteration, and only goes outside of the words of the statute to explain what is meant by " good faith." And this explanation is certainly very favorable to the defendants. (Civil Code, § 1919.)

BENNETT, J.—Numerous exceptions were taken during the progress of the trial and presented by the record, but they all seem to have been abandoned on the argument except two, and these only do we deem it necessary to notice:

*First*—Did the court err in refusing to instruct the jury as requested by the appellants; and

*Second*—Was there error in excluding the testimony offered by appellants in support of their counter claim.

According to appellants' theory, and their construction of the contract of March 30, plaintiff could not maintain an action on the note and order, and defendants could not be liable thereon until plaintiff had, by some sort of action by him brought directly against VanTassel, or in some other manner, settled the question of VanTassel's claim to the property. On this theory they asked the following instruction:

"If the jury believe from the evidence that said plaintiff " and defendant Wilber entered into the agreement in writing " of date March 30th, 1874, to deposit said note and order " with D. T. Bramble, and that it is still in full force and " virtue, then before the plaintiff can recover in this action " he must satisfy the jury from the evidence that he has made " good his title to said personal property mentioned and " described in said agreement, and especially as against said " Clarence VanTassel."

The court below in refusing this instruction, says: " This " means that the plaintiff cannot recover in this action until " by a separate action of some kind he shall have first estab- " lished his title to the property he sold to Wilber as against " Clarence VanTassel." We think the court took the correct view of this instruction under the pleadings, and very properly refused it.

We cannot give to the contract the construction contended for by appellants. If we should, we would be greatly embarrassed in endeavoring to define the kind of action to be brought by Cheatham against VanTassel for the purpose of settling the rights of VanTassel to the property. Cheatham had disposed of the property absolutely—had no interest in it, nor right of possession; and any action he might have brought would have been dismissed on motion, as being instituted and prosecuted by a mere stranger and intermedler. He was, therefore, unable to bring a suit. VanTassel had no object in bringing one, for he, as appears from the plead-

ings, possessed himself of a portion of the property without the aid of legal proceedings. The property had been sold, and its possession transferred to Wilber; what was then his duty in the premises? Could he quietly acquiesce in the forcible seizure of the property by VanTassel, take no legal steps for its recovery, or to enforce his rights as against Van-Tassel, and then plead the trespass of VanTassel as a defense against the payment of the note and order? Suppose he had paid the cash for the property, and taken from Cheatham a special warranty, what would have been his standing in court in an action to recover back the purchase price or for damages arising from a breach of the warranty without first having litigated VanTassel's right to the possession of the property? The property was taken by VanTassel about the first of July, 1874, as appears from the record, and this action was commenced some time in February, 1876; and during all that time Wilber seems to have been wholly indifferent—took no steps to assert his rights or to recover possession, and from that indifference and failure on his part to assert his rights, we are warranted in concluding that he was entirely willing that VanTassel should keep what property he had, if thereby he, Wilber, would be excused from paying the note and order. And may we not further conclude that the jury found the allegation in the complaint to be true, " that Van-Tassel acted in collusion with defendant Wilber, in obtaining possession of a part of said property in the night time, and bringing it across the Missouri River to this Territory."

The most reasonable construction to be placed on this agreement, and the only one, in my view, consistent with an honest purpose on the part of both parties is to regard it in the light of a special warranty against the claims of Van-Tassel; and the object and purpose which the parties had in placing the note and order in the hands of D. T. Bramble, were to prevent their negotiation before maturity, and thereby save to defendants any defense which they might have against their payment, growing out of a failure of consideration or breach of the warranty. Any other construction destroys the mutuality and reciprocal character of the agreement and

places it within the power of Wilber to postpone indefinitely the payment of the note and order.

Now, when suit is brought on this note and order, what in all good conscience, and within the spirit of this agreement, are defendants' rights? To do just what they have done, plead a failure of consideration, and property in VanTassel; or in other words a breach of the special warranty. The question of title to the property was fairly put in issue by the pleadings, and if the jury had found that VanTassel was the owner of the property at the time of its transfer from Cheatham to Wilber, then they could not have found for plaintiff. Defendants put this question of title in issue by their pleadings, and it has been found against them; what cause then have they for complaint? So far as the pleadings show, the only thing that could defeat plaintiff's right to recover would be the failure of title in him, or the fact of title being in VanTassel at the time of the transfer; and I am wholly unable to discover why this cannot be determined as well in an action on the note and order as in a separate suit against VanTassel. It is, however, insisted that this instruction was proper and should have been given, even under this view of the case. All the instructions given by the court are not before us, and in their absence we must presume that the jury was properly instructed on this branch of the case.

We come to notice briefly the second point, viz.: was there error in excluding the evidence offered by appellants in support of their counter claim. This testimony, as shown by the record, is as follows:

"The said Wilber being on the stand, testified further that he paid twenty-five dollars at Lime Creek, Nebraska, for keeping stock and *boarding drivers*. And David McConahan, another witness for the defendant, having also testified that he settled part of the bill at Lime Creek, Nebraska, and that he thought it was twenty-five dollars, and that the charge was for taking care of the horse. And the said defendants stating their object to be to prove by said witness in support of their counter claim for payment of charges, and lien upon one of the horses included in the sale by plaintiff to Wilber,

the said horse was kept at Lime Creek, Nebraska, by the station keeper McClaget, for several months, and offering to show what said keeping was worth and that said station keeper had said horse in his possession, and would not allow it to be taken away without the payment of his charges and claim to the amount of twenty-five dollars, and that said defendant Wilber paid the said station keeper McClaget- the said twenty-five dollars, and was compelled to in order to get possession of said horse. And thereupon the said plaintiff by his attorneys having objected to the reception of all evidence of said claims and lien for keeping said horse, and the defendants' attorneys having further asked the witness on the stand how long the horse was kept at Lime Creek, and how much it cost to keep him, and the plaintiff having objected to all such questions, and to the reception of any evidence in relation thereto, as being illegal and irrelevant, and objecting that defendants should produce said station keeper and prove by him the lien, if any, on said horse, the court sustained the plaintiff's said objection."

If all this evidence had been admitted, with all that was proposed in the offer, it certainly could not be urged as sufficient to support defendants' counter claim. It might have tended if followed up and connected by the proper testimony, but standing alone it was wholly insufficient, and there was no offer to so connect it. Admitting that the horse was kept for a certain period of time, and that such keeping was worth twenty-five dollars, and these facts had been shown beyond a peradventure of doubt, would that have authorized a recovery on the counter claim without showing that the lien still attached at the time, and that the charge for keeping was a justly subsisting indebtedness, due and unpaid? I certainly think not. And how did the defendants propose to show this? Simply by proving the declarations of McClaget, the station keeper, made to third parties. That is nothing more nor less than hearsay, and under no circumstances, such as surrounded this case, could be deemed competent or admissible. The evidence standing alone was clearly irrelevant, and the court was right in excluding it, unless the defendants

in proper manner offered to connect it by proper testimony, and even then it would be in the discretion of the court. Defendants might be required to introduce first their evidence establishing the lien, contract for keeping, and that the debt was still due and unpaid. It is claimed that the objection was sweeping, and precluded them from introducing any testimony in support of their counter claim. Taking the record all together we cannot put that construction on it. Plaintiff's objection concludes by stating " that defendants should produce said station keeper and prove by him the lien, if any, on said horse." This was reasonable and just. The witnesses had already testified that they settled with the station keeper McClaget, and paid him the money; he was the man who, as alleged, had kept the horse, boarded the drivers, claimed the lien, and demanded pay before he would permit the horse to be taken away. Is it not clearly made to appear that his testimony would have been the best evidence, and should, therefore, have been produced, unless it was not in defendants' power, and this they do not claim. It is insisted that any one knowing the facts in relation to the counter claim could testify as well thereto as the station keeper. That is certainly correct; but as appellants did not produce or offer to produce any such witness, its consideration becomes immaterial.

There are one or two questions of practice presented by this appeal which deserve attention, and I shall content myself with a simple statement of what I conceive the rule to be without discussion. I regard it as well settled that appellate courts will not consider exceptions to instructions which were not taken at the time they were given, or at least before verdict, unless further time has been given by the court. The reason of the rule is too obvious. If the Judge has erred, his attention should be called to it in season to correct it, without being compelled to set aside a verdict, and put the parties and the court to the expense and trouble of a new trial. And a party should not be permitted to sit quietly by, with full opportunity of knowing and correcting the error, but saying to himself, if the verdict is in my favor I am con-

tent, if not, I have the means of setting it aside. "All good fidelity to the court" certainly requires that the exception be taken before verdict, and if not so taken it shall be deemed waived.

Neither will an appellate court consider an isolated instruction, unless it appear from the record that it was the only one asked or given on the particular point to which it relates. As a general thing it is very difficult to determine the correctness of the ruling of the court below in giving or refusing an instruction, unless all the instructions given as well as those refused, on any one branch of the case are before us. And this, in every case, is the better practice.

Not finding any error in the rulings of the District Court, the judgment is

AFFIRMED.

SHANNON, C. J., concurring.

BARNES, Asso. J., dissenting, except on the questions of practice.