## UHE v. CHICAGO, M. & ST. P. RY. CO.

1. The legal effect of an order "that all proceedings be stayed" for a definite time is to stop further progress in the case at the point where such order attaches.

2. A judgment entered while such order is in force is irregularly entered.

3. In an action for the destruction of, or damages to, property, caused by

negligence, the giving or withholding of interest is, by Section 4578, Comp. Laws, committed to the discretion of the jury.

4.  In such case an instruction requiring the jury to compute interest on such damages, if any, as they might find for the plaintiff, is erroneous.

5.  Under Section 5049, Comp. Laws, "exceptions to the giving or refusing any instruction, or to its modification or change, may be taken at any time before the entry of final judgment in the case.

6.  Under this section there is no distinction, in respect to the time within which exceptions may be taken, between instructions given at the request of counsel and instructions given by the judge of his own motion.

7.  Section 5079, Comp. Laws, defining exceptions, and providing that they "must be taken at the time the decision is made," does not repeal or qualify Section 5049, providing that exceptions to instructions may be taken at any time before entry of final judgment.

(Syllabus by the Court.   Opinion filed Jan.  6, 1894.)

Appeal from circuit court, Turner county.

Action for damages for the destruction of plaintiff's property by fire alleged to have been caused by the negligence of defendant.

This case was first decided by this court in an opinion found in 3 S. D. 563, (54 N. W. 601,) in which the court reversed the judgment of the lower court in favor of the plaintiff. The plaintiff moved for a rehearing.   This opinion is upon the rehearing.   The former decision adhered to.

No new briefs filed on rehearing.

*Winsor & Kittredge*, for appellant.
*Palmer & Rogde*, for respondent.

KELLAM, J.  This cause is now before us on reargument, and we are asked to modify our former opinion, reported in 3 S. D. 563, 54 N. W. 601, in three respects, which will be noticed *seriatim*, reference being had to the former opinion for the facts.  In that opinion we held that an order of the court, made and entered after verdict, and before entry of judgment, "that all proceedings be stayed" for a definite time, operated to prohibit entry of judgment while such order was in force.   Counsel for respondent

contend that the term "all proceedings," as used in such order, means all proceedings subsequent to judgment, so that the order did not interfere with, or make irregular, the entry of judgment during its pendency.   We are satisfied, that from answers to direct inquiries, that the effect of such an order is understood differently in different circuits, and that the order in one circuit would be held to permit the entry of judgment, while in another it would be held otherwise; and that, if intended to allow it, the order itself should be so qualified.   If convinced that the former view was general, and the practice well established under it, we should be reluctant to disturb it, although we should still think it incorrect.   It cannot be questioned but that the order, in terms, prohibited any further proceeding in the case.   The entry of judgment is a proceeding,—taking another step forward.   This is what is forbidden.   Uncontrolled by local construction, we think the order would plainly suggest the thought that the court intended that the status of the case and the record should remain unchanged by any act of the parties for the time designated.   If a defendant in default procured such an order against the plaintiff, it would not be claimed that the plaintiff might still enter judgment. It not infrequently happens that the very object sought by a defendant is the staying of the entry of judgment against him, and in such a case it would be difficult for a court or judge, if such effect were intended, to make an order more absolutely prohibiting it.   We are referred to no reported case where the effect of such an order is considered, and we find very few.   In Hempstead v. Hempstead, 7 How. Pr. 8, the court held that an "order staying proceedings for twenty days" prohibited the entry of judgment during that time.   In that case there had been no trial and verdict, as in the case now before us, and the opinion is relevant only so far as it indicates the general scope of such an order.   In Danner v. Capehart, 41 Minn. 294, 42 N. W. 1062, the court recognized the force of "an order staying all proceedings" to prevent the entry of judgment on a referee's report

finding the facts and directing judgment, and the irregularity
of a judgment so entered.   In Ackerman v. Manufacturing Co.,
16 Wis. 155, the court set aside a judgment as irregular, be-
cause entered while an order staying proceedings was in force.
The defendant was in default, and plaintiff was entitled to judg-
ment before and when the stay was obtained.   Judge Payne
says the effect of the stay was to stop the proceedings in ex-
actly the condition they then were.  These cases are not cited as
necessarily decisive of the particular question before us, be-
cause upon dissimilar facts, but as bearing with considerable
directness upon the general force of such an order.   We are
unable to see any good reason why such an order, general in
its terms, and expressly staying all proceedings, should be
held to mean less than it plainly says.   A construction so re ·
sulting would be exceptional, and would hardly be tolerated
with respect to any other order.   Under such construction, if
the court intend to stay the entry of judgment, as it sometimes
will, it must superadd that prohibition to an order already stay-
ing all proceedings, and thus, in words, at least, stay more than
all.   We can see no reason for, or compensation in, such a con-
struction or practice.   It would be just as easy, and certainly
more in harmony with the precision and accuracy with which
courts are supposed to formulate their decisions, to except from
the general stay such proceedings, if any, as are to be permitted.
All would then understand the order alike, and no doubt or con
fusion could arise as to its meaning or effect.   Entertaining
these views, with great confidence in their correctness, we ad
here to our opinion,—that the fair and legal effect of the stay
was to forbid the entry of judgment during its continuance in
force.

It is next urged that this court was wrong in holding it
error in the court below to instruct the jury, if they should
find for the plaintiff, that, after determining the fair and rea-
sonable value of the property destroyed at the time of its de-
struction, "in addition to that it will be your duty to compute

the interest upon such sum, at the rate of seven per cent per annum, from the day at which the loss occurred." Our conclusion that this instruction was erroneous was, as stated in the original opinion, based upon Section 4578, Comp. Laws, which, omitting portions irrelevant to this case, is: "In an action for the breach of an obligation not arising from contract, * * * interest may be given in the discretion of the jury." Counsel for respondent cite several authorities to show that, in a case like this, the plaintiff is entitled to interest; but we are not allowed to discuss and decide this question upon common-law principles and adjudications, if the above recited statutory provision is applicable to this case. Recognizing this fact, they call our attention to Section 4600, and urge that the two sections should be construed together, and that, thus construed, the plaintiff's measure of damages is fixed as instructed by the court. That section reads as as follows: "For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." It will be noticed that this latter section fixes a general measure of damages for the class of cases named, "except where otherwise expressly provided by this code." But the former section does expressly provide that interest may or may not be given, in the discretion of the jury; thus bringing this case within the very terms of the exception. Suppose, under this instruction, the jury had declined to give interest; would it have been error? It certainly would, if the instruction is correct; and, being error to the prejudice of the plaintiff, the court must have set aside the verdict, or, upon the theory of the instruction,—that the court, and not the jury, should determine that interest be allowed,—it might have added interest to the jury's verdict. This the trial court attempted to do in Garrett v. Railroad Co., 36 Iowa, 121, and it was held error.

Counsel for respondent further contend that the two sec-

tions quoted were intended to apply to entirely different classes of actions,—the latter to cases like the one at bar, the former to cases like those for personal injury. But there is nothing in the statute to suggest such distinction, and we are inclined to think the reason for making or attempting to make it would be more seeming than real. · It is argued that, where the action is for the destruction of property occurring a year before the trial a recovery for the value of the property simply at the time of the destruction would be an inadequate compensation to the plaintiff. But the same thing is true with respect to a recovery for personal injury. The theory of the verdict is, in either case, that it finds the amount of damages which the plaintiff suffered by the wrongful act which caused it. In the latter case it may include subsequent suffering and pain, but the theory of the verdict is that it covers just what loss or damage plaintiff sustained by and at the time of the wrongful act. The full consequences of the act may not become apparent until afterwards, but they still relate back to, and are a part of, the damage, the right to recover which was complete upon the occurrence of the wrongful act. In either class of cases, special damages may be recovered if properly pleaded, so that there is no reason for a distinction on that account. If a plaintiff is entitled, as matter of law, to interest on what he has lost by the burning of his trees, why is he not, for the same reason, so entitled to interest on what he has lost by the breaking of his arm, or the taking off of his leg? But, whether or not there is reason for the distinction which respondent attempts to make, the fact remains that the legislature·has given us a rule which makes none. In discussing this question, respondent treats it as though the effect of holding the instruction under consideration erroneous would be to deny interest to. plaintiff in such case. But this is not so. It only leaves the matter of interest, as other elements of damage, to the jury, and not to the court. Prior to the adoption of the rule of the code, it was unsettled whether interest was allowable as a matter of right, or at the discretion of

the jury.    In Chapman v. Railroad Co., 26 Wis. 295, it was held
that an instruction by the court to the jury to allow interest
was not error, while in Black v. Railroad Co., 45 Barb. 40, it
was directly held that it was, and that the question of interest
should be left to the discretion of the jury.    Each case can be
supported by authorities, which it is unnecessary now to col-
late.    With the law in this condition, our legislature saw fit to
adopt a definite and certain rule,—that the allowance of inter-
est should be determined by the jury, and not by the court.
this case is squarely within the terms of such rule, and it has
definitely left with the jury the right, in all such cases, to give
or withhold interest, in their discretion.    In almost precisely
such a case as this, the supreme court of North Dakota has
given this section the same effect as our former opinion gave it.
See Johnson v. Railroad Co., 48 N. W. 227.

Lastly, respondent urges us to reconsider our original
opinion as to our holding that appellants' exception to the in-
struction of the court was taken in time, and therefore available
to them on review.    After the return of the verdict, and before
the entry of judgment, the court, on motion of defendants (ap-
pellants here), ordered all further proceedings stayed for 60
days.    While this order was in force, and on file in the proper
clerk's office, the plaintiff, without notice to the defendants,
upon the theory and understanding that the staying order did
not prohibit the entry of judgment, as is claimed to be the
practice in that circuit, caused judgment upon the verdict to be
entered.    Some considerable time after, and while such stay of
proceedings was in force, it having been extended by the court,
defendants' counsel filed an exception to that part of the in-
struction which required the jury to add interest to whatever
damages they might find for the plaintiff, if any.    They also
moved the court, upon motion, to vacate the entry of judgment
as irregular, and to set aside such judgment, for the purpose of
having such exception incorporated into a bill of exceptions as
taken prior to the entry of judgment.    This motion was denied.

Without going into further details, the question presented and argued was whether, assuming the judgment to have been irregularly entered, as in violation of the stay order, if vacated and out of the way, the defendants could then take a valid and available exception to such instruction, three months after the trial and verdict. We held that under the peculiar provisions of Section 5049, Comp. Laws, they could, and that, defendants being entitled to the benefit of such exception so taken, such irregular entry of judgment was to their prejudice, and should have been set aside; and that is the question we have now to reconsider.

Sections 5048 and 5049, Comp. Laws, are as follows: "Sec. 5048. The court, in charging the jury, shall only instruct as to the law of the case; and no judge shall instruct the petit jury in any case, civil or criminal, unless such instructions are reduced to writing; and when instructions are asked which the judge cannot give, he shall write on the margin thereof the word 'Refused,' and such as he approves he shall write on the margin thereof the word 'Given;' and he shall in no case, after instructions are given, qualify, modify, or in any manner explain the same to the jury, otherwise than in writing; and all instructions asked for by counsel shall be given or refused by the judge, without modification or change, unless such modification or change be consented to by the counsel asking the same. Sec. 5049. All instructions given by the judge shall be read to the jury in the following order: 1: Defendant's instructions by defendant's counsel. 2. Plaintiff's instructions by plaintiff's counsel. 3. Instructions given by the judge, of his own motion, if any, by the judge giving the same; and all instructions so given and read shall be taken by the jury in their retirement, and returned into court with their verdict. Exceptions to the giving or refusing any instruction, or to its modification or change, may be taken at any time before the entry of final judgment in the case."

The claim of respondent is that an exception to an instruc-

tion given by the judge of his own motion, of which class this was one, can only be taken before the retirement of the jury, and, as a direct authority from the territorial supreme court, refers to, and quotes from, Cheatham v. Wilber, 1 Dak. 335, 46 N. W. 580. But this decision was rendered prior to the adoption of the above sections; and in a footnote to the case, Judge GRANVILLE G. BENNETT, then one of the judges of the court which made the decision, and who edited the first volume of the reports, says that the rule announced in the opinion was changed by these subsequently enacted sections. This, of course, was not authoritative, but was the opinion of one of the judges, and a lawyer of eminent ability. We are also referred to Boss v. Railroad Co., (N. D.) 49 N. W. 658, as a decision under these same sections, upon the question now before us. All the court decided there was that an exception to the giving of an oral instruction could not be taken after the trial. The exception was not to "the giving or refusing any instruction," but to the manner of giving it. It is to the giving of the instruction—the imparting it to the jury—that the statute allows an exception before judgment. In the North Dakota case the parties had agreed between themselves that either might take "exceptions to the charge" after verdict; and the court held—properly, as we think—that "exceptions to the charge" did not mean exceptions to the mode or manner of getting the charge to the jury. If a judge, against objection, should charge a jury without having such instructions reduced to writing, the objecting party might except, but the exception would not be to the instruction, but to the particular and unlawful method of giving it; and the taking of such exception, not being otherwise provided for, would like any other exception to error occurring at the trial, come under the general rule that exceptions must be taken when the error is committed. We are next referred to Lumber Co. v. Pennington, 2 Dak. 467, 11 N. W. 497, in which SHANNON, C. J., comments upon these sections, and the fact

that by them instructions are divided into two classes,—those given by the court of its own motion, and those given at the request of counsel. He says: "It would appear, therefore, that exceptions to the former must be taken at the time, so that, the attention of the court being drawn to the points, the judge may have an opportunity to correct, if necessary, any inadvertence or mistake before the jury retires. As to the latter the same reason does not apply, for attention is beforehand called by the specific request, and a reasonable opportunity for answering them is offered." If a fair construction of these sections makes this distinction as to the time for taking exceptions, then the courts must observe it, whether in their opinion reasonable or not; but, if a fair construction does not make it, the courts cannot arbitrarily import it into the statute, however convenient and reasonable they might regard it. The legislature is charged with the power and the duty of making the laws, and the courts with applying them to the facts before them. If, by their terms, their meaning is ambiguous, the courts may construe them, and declare the legislative intent; otherwise there is ordinarily no occasion or room for judicial construction, or, in the almost sterotyped expression of the courts, it is not allowable to interpret what has no need of interpretation.

Section 5048 provides that all instructions, whether eminating from the judge or from the counsel, shall be in writing; Section 5049 declares that "all instructions given by the judge" shall be read to the jury in the order prescribed in the immediately succeeding paragraphs; so that the instructions referred to include those given by the judge of his own motion and those given at the request of the counsel. Defendant's instructions shall be first read. Paragraph 1. Plaintiff's instructions shall be next read. Paragraph 2. The judge's instructions of his own motion shall be next read. Paragraph 3. The same paragraph then proceeds: "And all instructions so given and read shall be taken by the jury," etc. No distinction is yet indicated,

and all go to the jury. Then occurs the proposition which is the subject of this dispute: "Exceptions to the giving or refusing any instruction, or to its modification or change, may be taken at any time before the entry of final judgment in the case." It is argued that the two words "giving" and "refusing," so associated and used relatively to each other, are confined in their application to such instructions as may be either given or refused by the court, to-wit, the instruction asked for by counsel; but this seems to us a forced and unnatural interpretation of this expression, especially when read in connection with what precedes and leads up to it. Twice before, in the same section, both classes of instructions ars spoken of as "given" by the judge. A word repeatedly used in a statute will bear the same meaning throughout the statute, unless it is apparent that another meaning is intended. Pitte v. Shipley. 46 Cal. 154; Doe v. Du Bois, 16 N. J. Law, 293; Rhodes v. Weldy, 46 Ohio St. 234, 20 N. E. 461. It it had been the plain intent of the legislature to allow exceptions to be thus taken to either or both classes of instructions, how could such intent have been more aptly or clearly expressed than by authorizing "exceptions to the giving or refusing any instruction?" These sections, with those immediately preceding and those immediately following, mark with great particularity the progressive steps of a trial, from the swearing of the jury to the return of their verdict. They bear upon their face evidence of an intention to cover the whole ground between those limbs. Give this provision authorizing exceptions to instructions the meaning claimed for it by respondents,—that is, that it refers only to the instructions asked for by counsel,—and no provision whatever is made for exceptions to instructions given by the judge of his own motion. We do not say that, without express statutory authority, a party could not except; but it is probable that in a statute so particularly directing where, and how, and by whom each advancing step should be taken,—a complete formula for the trial down to the very minute details,—there should have been either

deliberately or inadvertently omitted any provision for, or reference to, taking exceptions to the instructions emanating from the judge? It could hardly have been done thoughtlessly, and we do not think it would have been done purposely.

Apply this argument of the particular and qualified effect to be accorded to the word "giving," on account of its association with the word "refusing," to another case. Our statute authorizes a court, of its own motion, to order a new trial. It also authorizes an appeal from an order granting or refusing a new trial. Does the right of appeal extend only to such an order as might be either granted or refused, to wit, an order asked for by one party or the other, and not to an order made by the court of its own motion? We think such a contention in that case would not meet with favor, but the question and the condition seem to us very similar to the one under discussion.

Returning to Section 5049, we do not see that the further expression, "or to its modification or change," is applicable only to the instructions asked for by counsel. The modification or change which may thus be excepted to is the modification or change referred to and forbidden in respect to either class of instructions in the preceding section. These two sections are probably the result of an attempt to improve upon Sections 53 and 54, Chap. 110, Rev. Stat. Ill. 1885. The first of these sections (53) simply prohibits oral instructions. The second (54) requires the judge to mark "refused" on such rejected instructions as he cannot give, and "given" on such as he does give, and forbids any modification or explanation of an instruction given, except in writing. Then, in a new paragraph added in 1872, it is provided that "exceptions to the giving or refusing any instructions may be entered at any time before the entry of final judgment in the case." Here the same expression is used as in our law, "exceptions to the giving or refusing any instruction," etc.; but we find no case from that state in which any distinction is made between instructions given at the request of the counsel and those given by the judge of his own

motion.   They are treated precisely alike, and both are sub-
ject to the same rule.   The Illinois cases, as we should expect
under this law, all hold that exceptions to instructions must be
taken at the trial, for that is without doubt the general rule,
and there is nothing in the Illinois law to change it; and it is
the rule in this jurisdiction, unless changed by statute.   Sev-
eral of these Illinois cases, however, recognize a difference be-
tween taking an exception—that is, making it known to the
court; noting it—and writing it out in form for entry of record.
The taking of it, under their decisions, must be at the time,
but it may be entered after the trial.   See the recent case of
England v. Vandermark, (Ill. Sup.) 35 N. E. 465, where the
object and form of this provision are explained.   "To enter is
to make a record of, and not merely to announce."   6 Amer. &
Eng. Enc. Law, p. 649.   Webster says it is "the act of commit-
ting to writing, or of recording in a book."   To take an order
or a judgment is not to enter it.   Either may be taken, and
never entered.   Blatchford v. Newberry, 100 Ill. 484.   Our
statute extends, not the time for entering exceptions to instruc-
tions, but the time for taking them.   The Illinois provision was
thus changed when adopted by our legislature, and we do not
feel authorized to say that it was not done deliberately, and for
the very purpose of effecting the change indicated.   Such would
be the understanding and conclusion generally.   If no change
were intended, it is fair to presume none would have been made.
It may be—we do not know—that the theory of the legislature
in making such change was that every litigant was entitled to
have his rights determined by the application of correct rules
of law, and that his rights should not be forever lost to him be-
cause his counsel did not, at the instant, detect an error in the
charge, which, it may be, produced a verdict against him.   It
is urged that to allow exceptions to instructions without hav-
ing called the attention of the judge to the same, so as to give
him an opportunity to make corrections, would be unfair to
him.   To this it might be suggested that the chief object of a

jujicial trial is the determination and establishment of right and justice between the parties, in the effort to effect which the court is but an instrument, and that the accomplishment of the very substantial object sought ought not to be sacrificed to the incidental one of protecting from criticism the opinion of the judge. It might be suggested that to find an error in a judge's charge and correct it would not seriously harm the judge or anybody else, but to find such an error which cost a party his life or his fortune, and he remediless to repair such consequences because the error was not detected at the opportune moment, would be serious. It is certain that such considerations have occurred to and prevailed with some other legislatures. In Iowa, by statute, either party may take and file exceptions to the judge's charge or instructions within three days after the verdict is rendered; in Wisconsin, by statute, either party may take such exception at any time during the term; while in Texas and Idaho no exceptions need be taken to written instructions. When given, they become a part of the record, and error is available on appeal on assignment. With the thought of thus saving the rights of litigants, and with these examples before them, it would not be unaccountable if this change had been deliberately made for the very purpose of giving to the parties whose rights, in a great measure, hang upon them, further time for an examination, and a better understanding of their meaning and force, than would ordinarily be afforded by simply hearing them read to the jury; but, whatever their thought was, they have made the law as it stands, and we cannot ignore it.

It cannot be maintained, we think, that this provision as to the time within which exceptions to instructions may be taken, is repealed or qualified by Section 5079, which defines an exception generally, and provides that it "must be taken at the time the decision is made, except," etc. While said Section 5079 was, in its present form, adopted it 1887, it was not, in substance, a new law. The law in this jurisdiction was the same

before the enactment of that section. It was the same, to-wit, that exceptions must be taken at the time, before the enactment of the provision already discussed as to the time when exceptions to instructions might be taken, (Cheatham v. Wilber, *supra*;) so that, essentially, said Section 5049 is the later law, and qualifies, to the extent specified, the former existing law, that exceptions must be taken at the time. Such was and would be the law without that section. But if not so treated, and Section 5079 were regarded as a new and later law, the well-established rule would apply that the general terms of a later statute will not control the specific provisions of an earlier one, making distinct and dissimilar regulations for a particular class of cases, unless such intention clearly appears. Suth. St. Const. § 484. When the later section (5079) was adopted by the legislature, they knew that they had already provided that as to the specific item of exceptions to instructions, they might be taken at any time before the entry of judgment. If they had intended to abrogate or repeal such provision, it is reasonable to suppose that they would have done so expressly. Suth. St. Const § 287. If Lumber Co. v. Pennington had decided that exceptions to any instructions of either class should be taken at the trial, we should have been more inclined, even though it violated the letter of the statute, to follow it as *stare decisis*, for such a rule would be in harmony with the general practice; but as we have already said, and attempted to explain, we can find in the statute no ground for such distinction with respect to the time or the manner of taking exceptions. With great respect for Judge SHANNON, whose wide and thorough learning we all acknowledge, we think the decision innovates the rule of the statute, and does not go far enough, in attempting to announce a better one, to justify us in ignoring the statute and following the decision. If the law, as it stands, is unreasonable, the legislature, and not the courts, ought to change it.

We are aware, and were when we made the former decision, that in some respects it was not in harmony with the general

practice and understanding of the trial judges and bar of the state; but the appellants were before us, claiming that the statute secured to them certain rights which were denied them by the ruling of the trial court, and we felt obliged to go to the statute for the test and measure of those rights. We undertook the re-examination of this latter question, hoping that we might reach a different conclusion, and reverse our former opinion, but we cannot do it. This, with the ability and earnestness with which our former opinion was attacked upon reargument, is our excuse for the length of this opinion.