BEKA et al., Respondents v. LITHIUM CORPORATION
OF AMERICA, Appellant.

(92 N.W.2d 156)

(File No. 9697. Opinion filed September 16, 1958)

**Whiting, Lynn, Freiberg & Shultz,** Rapid City, for Defendant and Appellant.

**Gunderson, Farrar & Carrell,** Rapid City, for Plaintiff and Respondent.

RENTTO, P. J.    The plaintiff partnership instituted this action on August 19, 1957, to recover damages from the defendant corporation caused by its breach of a contract. On trial to a jury the court directed a verdict for plaintiff in the sum of $3,000 and allowed a recovery of interest from the first day of the month after the breach. Defendant appeals from the judgment entered on this verdict.

The Lithium Corporation had contracted to furnish the Maywood Chemical Works with specified quantities and types of lithium. That contract gave to the Lithium Corporation the right to remove lithium ores from an old waste dump at a mine owned by the Chemical Works and treat it at a mill owned by the Lithium Corporation. They were to remove a minimum of 100 tons a day of materials that would pass through a one and one-half inch screen. To accomplish this it was necessary that the material at the dump be screened and those portions thereof small enough to go through the screen loaded on trucks and hauled to and dumped at the mill, which was about eight-tenths of a mile away.

By the contract here involved the Lithium Corporation subcontracted this work to the plaintiff partnership. The partnership contracted to screen the materials in this dump and deliver daily to the Lithium Corporation at its mill 100 tons of the screened material. For this service it was to receive $3.50 per ton to be paid on monthly billings. Performance by the partnership was begun in January 1954. The contract stipulated that the partnership would continue this service until March 31, 1955. The

Lithium Corporation reserved the right to terminate the contract on ten days' written notice to the partnership.

In addition to delivering the required daily tonnage the partnership accumulated a stockpile of screened material from which to secure the daily requirement in the event of a breakdown in its operation. On June 17, 1954, without prior written notice, the defendant terminated the contract. At that time the partnership had in its stockpile 1,500 tons of screened ore. This action is predicated on the theory that if the ten days' notice had been given, as agreed in the contract, the partnership during the period remaining before such notice became effective would have delivered to the Lithium Corporation another 1,000 tons of ore from its stockpile at $3.50 per ton. In its complaint it asks for $3,000 as damages with interest from July 1, 1954.

The record discloses that at the time this contract was entered into and during the time it was performing its obligations thereunder, plaintiff partnership had not filed the statement required by our fictitious name statute SDC 49.08. However, it did file the statement on April 15, 1957. This was almost three years after the contract was terminated and about four months before the institution of this action. This dereliction is the basis of the principal defense urged by the defendant.

In brief, it argues that since SDC 49.0801 makes it unlawful for a partnership to engage in or conduct a business for profit under a name which does not plainly show the true surname of each person interested in the business without filing the described statement, that the contract here involved is invalid and unenforceable. This contention was before us recently in Mellgren Plumbing Shop, Inc., v. Lewis and Tinsley, Inc., 77 S. D. 193, 90 N. W. 2d 78. The opinion in that case, which was handed down a short time after oral argument was heard in this case, forecloses the view here urged. It was there held that contracts entered into or performed under such circumstances are valid. Since the statement required by SDC 49.0801 was filed before the institution of this litigation, the plaintiff partnership is authorized by SDC 49.0802 to maintain this action.

The second reason urged by the defendant corporation for reversal is that the court should not have withdrawn from the jury the determination of the amount of detriment suffered by plaintiff. The $3,000 asked as damages was arrived at by deducting from the $3,500 which the Lithium Corporation would have paid under the agreement for the 1,000 tons the partnership would have delivered in the ten-day period, which was taken from it by defendant's failure to give the ten days' notice, the cost of loading it at the stockpile and hauling it to the mill.

■ On this element the only evidence in the record is that given by one of the members of the plaintiff partnership. His testimony was that the going price for this service was about 50¢ a ton. The defendant does not seem to question the accuracy of this testimony. It does, however, contend that the matter should have been submitted to the jury because the jurors were privileged to believe this testimony or not as they saw fit, or to draw such inferences from it as they thought justified. We think the court's action in this regard was in keeping with the rule laid down by this court in Jerke v. Delmont State Bank, 54 S.D. 446, 223 N.W. 585, 594, 72 A.L.R. 7.

In that case this court wrote about the duty of the trial court to direct a verdict in a jury case in which the testimony on behalf of the proponent was undisputed. Speaking through Campbell, Judge, it said:

"* * * the rule of reasonable judgment must be applied to each case upon its particular facts, and, if the testimony in behalf of the party having the burden of proof is clear and full, not extraordinary or incredible in the light of general experience, and not contradicted, either directly or indirectly, by other witnesses or by circumstances disclosed, and is so plain and complete that disbelief therein could not arise by rational processes applied to the evidence, but would be whimsical or arbitrary, then, and in such case, it is not only permissible, but highly proper, to direct the verdict, and the direction of such verdict should not be

prevented merely by reason of the fact that one or more of the witnesses are interested in the transaction or the result of the suit."

In Vol. IX, Wigmore on Evidence, 3d Edition, § 2495, p. 305, it is written that this view is accepted by the majority of courts. That authority quotes liberally from the opinion in the Jerke case and says that it "convincingly expounds the correct principle with inexorable logic."

In Crilly v. Fitzsimmons, 73 S.D. 646, 48 N.W.2d 62, this court not only approved the rule in the Jerke case but made it the measure of the duty of the trial court in entering findings in an equity case under similar circumstances. Defendant supports its position by citation of Crilly v. Morris, 70 S.D. 584, 19 N.W.2d 836 and Jorgenson v. Jorgenson, 74 S.D. 239, 51 N.W.2d 632. These cases are not concerned with verdicts directed by the trial court. Rather, in the connection cited, they are authority for the proposition that the trier of facts is not bound by uncontradicted testimony which is grossly improbable.

The Jerke case did not overlook the factor of the credibility as it enters into the direction of a verdict. It is there written:

"But the entry of the factor of credibility, either one way or the other, can make no difference in the operation of the fundamental principle which necessarily underlies the direction of verdicts in all cases. The question of whether reasonable minds could arrive by reasoning processes at more than one opinion or conclusion is always a question for the judge. The entry of the factor of credibility means simply the existence of one more item upon which the intellectual faculties are to operate. Of course, as the items to be reasoned upon increase in number, the likelihood of there being but one possible reasonable result mathematically diminishes; but, when that situation does exist, it should not be affected by the fact that credibility is also involved."

Defendant's last contention concerns the allowance of interest. On termination of the contract the partnership billed the Lithium Corporation for $3,000, the amount it claimed was owing it for the 1,000 tons it would have delivered in the ten-day period it would have had if the defendant corporation had given the notice called for by the contract. In that calculation it allowed for the 50¢ per ton cost of loading and hauling. The trial court was of the view that this $3,000 was due and owing on July 1, 1954, and since the contract provided for monthly payments, it allowed interest from that date. Defendant argues that because the amount of the claim was unliquidated, interest was not properly allowable.

■■ This question involves the application and construction of SDC 37.1711, which is as follows:

"Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor, from paying the debt."

The mere fact that the claim is disputed does not defeat the allowance of interest. Corcoran v. Halloran, 20 S.D. 384, 107 N.W. 210. As applied to this case our statute was construed by this court in Gearhart v. Hyde, 39 S.D. 273, 164 N.W. 58. The rule announced in that case is that interest is allowable on damages if there exists established or reasonably ascertainable market prices or values of the subject matter by reference to which the amount due may be determined by computation. This rule seems to be generally accepted. Restatement, Contracts, § 337; 15 Am.Jur., Damages, § 166; 47 C.J.S. Interests § 19. The reason for denying interest on a claim is that where the person liable does not know what sum he owes, he cannot be in default for not paying. When the exact sum of the indebtedness is known or can be readily ascertained the reason for the denial of interest does not exist.

California has an identical statute. It has there been construed in this regard in numerous cases. See West's Annotated California Code, Civil, § 3287 and Cal.Jur.2d, Vol. 14, Damages, § 79. The route travelled by the courts in that state in applying this legislative declaration is set out in detail in Lineman v. Schmidt, 32 Cal.2d 204, 195 P.2d 408, 4 A.L.R.2d 1380. See, also, Annotation, 4 A.L.R.2d 1388; Chase v. National Indemnity Co., 129 Cal. App. 853, 278 P.2d 68; Maurice L. Bein, Inc., v. Housing Authority, Cal.App., 321 P.2d 753. In all but their earliest cases California applied the general rule approved in this jurisdiction in the Gearhart case. It seems clear from these cases that the instances in which interest will be denied have been progressively restricted by a liberal application of the rule.

■ That an established or reasonably ascertainable market price for loading and hauling the ore from the stockpile to the mill existed, is apparent from the record. In determining this the court did not have to select from conflicting evidence. Plaintiff's testimony on this feature was a statement, without objection, of the going price for loading and hauling each ton. Defendant did not cross-examine the witness on this statement nor did it offer any evidence in contradiction. Allowance in this amount was made in the final statement sent the defendant. It seems to us that the damages to which plaintiff was entitled were capable of being made certain by calculation. Accordingly the court did not err in allowing interest thereon.

Affirmed.

All the Judges concur.