NORTHWESTERN ENGINEERING
COMPANY, Plaintiff and Appellee,

v.

THUNDERBOLT ENTERPRISES, IN-
CORPORATED, Defendant
and Appellant.

No. 13090.

Supreme Court of South Dakota.

Argued Nov. 24, 1980.

Decided Jan. 28, 1981.

Edward C. Carpenter of Costello, Porter, Hill, Nelson, Heisterkamp & Bushnell, Rapid City, for plaintiff and appellee.

C. E. Light of Light Law Offices, Yankton, for defendant and appellant; Smith, Peterson, Beckman & Willson, Council Bluffs, Iowa, on the brief.

DUNN, Justice.

This is an appeal from a judgment entered in favor of Northwestern Engineering Company (Northwestern) in the amount of $51,015.00, plus prejudgment interest of $11,403.02, plus costs of $834.67, against Thunderbolt Enterprises, Inc. (Thunderbolt), with an offset to Thunderbolt in the amount of $12,200.00. We affirm in part, reverse in part, and remand with directions to enter a judgment consistent with this opinion.

On September 25, 1973, Thunderbolt and Lakota Enterprises (Lakota) entered into a written subcontract agreement dealing with the horizontal or groundwork construction of a residential construction project on the Cheyenne River Indian Reservation. Northwestern was engaged as the indemnitor on the performance bond. During November of 1973 Lakota commenced work under this contract. Lakota became insolvent during the winter of 1973.

Thunderbolt then requested that Northwestern, as indemnitor of the performance bond, assume performance of the subcontract. Northwestern began performance under the Lakota-Thunderbolt subcontract. A disagreement arose regarding the scope of the work to be performed by Northwestern. Northwestern refused to perform certain tasks, claiming that the extent of the work was limited by a three-page document attached to the subcontract. This document is typed on Lakota letterhead and is currently attached to the subcontract. The substance of this three-page document is an itemized list of unit prices, total prices, and the type of tasks involved. Furthermore, the document contains a qualification at the bottom of the last two pages stating that, "[t]his quote includes only the above quantities."

The trial court made a finding of fact that the three-page document was attached to the subcontract at the time of its execution, thereby limiting Northwestern's obligation to those items listed in the three-page document. The trial court then unexplainably granted a $12,200.00 offset to Thunderbolt for an item listed as yardwork, which is found only in the body of the subcontract and is absent from the three-page document.

This brings us to the first issue raised by Thunderbolt on appeal. Did the trial court err in finding that the three-page document was attached to and a part of the subcontract?

The standard to be applied in reviewing the trial court's findings of fact is:

On review, the successful party is entitled to the benefit of his version of the evidence and of all inferences fairly deducible therefrom which are favorable to the court's action . . . . "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." . . .

. . . The question is not whether this court would have made the same findings that the trial court did, but whether on the entire evidence we are left with a definite and firm conviction that a mistake has been committed . . . .

*Cunningham v. Yankton Clinic, P. A.,* 262 N.W.2d 508, 512 (S.D.1978) (citations omitted).

■ We hold that the trial court did not err in finding that the three-page document was attached at the time of the execution of the subcontract and that the finding is not clearly erroneous. Because of the voluminous nature of the record, we shall list only a modicum of the evidence which supports this finding.

The trial court had before it testimony of a signatory of the contract that the three-page document was part of the subcontract at the time of the execution. This testimony was as follows:

Q [Mr. Carpenter]: Now, calling your attention particularly to the three sheets, typewritten sheets that are on Lakota Enterprises, Inc. stationery, were those a part of the subcontract at the time you executed it?

A [Mr. Swan]: Yes, they were.

Swan then went on to testify that it was clearly understood by all parties that only the items set out in this three-page document were being subcontracted for. Furthermore, there was testimony that the customary method of identifying the scope of the work that was bid upon was by attachment of a unit-price breakdown, similar to what was done here. The subcontract itself contemplates the attachment of exhibits by providing in Article I thereof that: "The contract Documents for this Subcontract consist of this Agreement and any exhibits attached hereto . . ." Finally, the three-

page document was present when the subcontract was filed with the director of the Cheyenne River Housing Authority.

In summation, we hold that even though we may or may not have reached the same findings of fact as were reached by the trial court, we are not left with a firm and definite conviction that a mistake has been committed and that these findings as they relate to the three-page document are clearly erroneous.

■ The next issue raised by Thunderbolt upon appeal is whether any ambiguities in the subcontract should have been construed against the drafter.

We are cognizant of the general rule " '. . . where an ambiguous contract exists, it should be interpreted more strongly against one who drafted the contract and caused the uncertainty to exist.' " *Delzer Const. Co. v. South Dakota State Bd.*, 275 N.W.2d 352, 357 (S.D.1979). This issue, however, does not appear to have been presented or argued to the trial court. Thus, as we stated in *Chipperfield v. Woessner et al.*, 84 S.D. 13, 19, 166 N.W.2d 727, 730 (1969): "Since our function is that of review, issues not presented to the trial court are not before us on appeal." Even if this issue was properly before us, the record does not disclose who drafted the subcontract. Without knowing who is the scrivener, neither we nor the trial court could apply this rule of construction.

■ We now turn to the only issue raised by Northwestern's notice of review: Whether Thunderbolt was properly granted an offset of $12,200.00 for yardwork. The trial court's Findings of Fact state:

8. That under the terms of the subcontract agreement Lakota Enterprises, Inc. was to perform an item designated as yardwork, Item 54, on the Form 51000 which included the installation and furnishing of clothesline poles, garbage rack holders and stair railings.

9. That Northwestern Engineering Company did not perform the yardwork and Defendant Thunderbolt Enterprises, Inc. is therefore entitled to an offset for

that item in the sum of Twelve Thousand Two Hundred Dollars ($12,200.00).

Those items listed as yardwork may only be found through a meticulous tracing of oblique references to plans and drawings made in specification section 0270 of Article II of the subcontract and then by way of another painstaking trek through reams of plans and drawings, these items listed as yardwork appear. The yardwork items, however, are omitted from the three-page document.

Having found that the three-page document was attached at the time of execution, thereby limiting Northwestern's duties to those listed in this three-page document, the trial court unexplainably turns to Article II of the subcontract and allows an offset for yardwork. This leaves such an incongruous result that we must hold that the findings of fact that relate to yardwork are clearly erroneous. Therefore, it was error to grant a $12,200.00 offset to Thunderbolt for work Northwestern was not obligated to perform.

■ The final issue raised on appeal is whether the trial court properly awarded prejudgment interest.

Under SDCL 21–1–11, prejudgment interest may be allowed if (1) the damages are certain or are capable of being made certain by calculation; and (2) the right to recover vested on a particular day. See *Aetna Casualty and Surety Company v. United States*, 365 F.2d 997 (8th Cir. 1966); *American Property Services v. Barringer*, 256 N.W.2d 887 (S.D.1977); *State v. Ed Cox & Son*, 81 S.D. 165, 132 N.W.2d 282 (1965); *Beka v. Lithium Corporation*, 77 S.D. 370, 92 N.W.2d 156 (1958). Here the sum due vested on the 31st day of August, 1976, the date of the last billing for work performed by Northwestern, thus fulfilling the requirement of vesting upon a particular day.

The only question remaining is whether the sum due was certain or capable of being made certain by calculation.

The mere fact that the claim is disputed does not defeat the allowance of interest . . . . [I]nterest is allowable on damages

if there exists established or reasonably ascertainable market prices or values of the subject matter by reference to which the amount due may be determined by computation. This rule seems to be generally accepted .... The reason for denying interest on a claim is that where the person liable does not know what sum he owes, he cannot be in default for not paying. When the exact sum of the indebtedness is known or can be readily ascertained the reason for the denial of interest does not exist.

*Beka,* 77 S.D. at 375, 92 N.W.2d at 159–160 (citations omitted).

Thunderbolt could readily ascertain the exact amount due merely by adding the total amount of receivables for work performed by Northwestern to the total amount of retainage that Thunderbolt was withholding from Northwestern, and deducting therefrom the payments already made and an offset for concrete floors which the parties had previously agreed upon.

Once the liability was settled in accordance with the limitations of the three-page addendum to the contract, the amount of damages became readily ascertainable. See, *Beka,* supra. We therefore hold that it was not error to award prejudgment interest.

Since prejudgment interest was properly allowed, but the trial court erred in granting a $12,200.00 offset for yardwork, the judgment appealed from must be modified to allow Northwestern the $12,200.00 amount of that offset with prejudgment interest thereon.

Accordingly, we reverse that portion of the judgment allowing an offset of $12,200.00 for yardwork and remand with directions to enter a judgment consistent with this opinion.

WOLLMAN, C. J., and MORGAN, J., concur.

HENDERSON and FOSHEIM, JJ., concur in part and dissent in part.

HENDERSON, Justice (concurring in part, dissenting in part).

I disagree with the majority as to the award of prejudgment interest. I do not believe that the damages are certain or are capable of being made certain by calculation.

The majority's reliance on *Beka v. Lithium Corporation,* 77 S.D. 370, 92 N.W.2d 156 (1958), is inapposite. In ruling that the plaintiff was entitled to damages, the majority in *Beka* stated: "That an established or reasonably ascertainable market price for loading and hauling the ore from the stockpile to the mill existed, is apparent from the record. In determining this the court did not have to select from conflicting evidence." 77 S.D. at 376, 92 N.W.2d at 160. Moreover, plaintiff's testimony was entirely uncontradicted.

Here, the trial court had not established or reasonably ascertained market values upon which to base its decision. On the contrary, the trial court, faced with a maze of conflicting evidence, arbitrarily placed a valuation on the work completed by the parties. Under these circumstances, the trial court's award of prejudgment interest was clearly erroneous. In *State v. Ed Cox and Son,* 81 S.D. 165, 180–181, 132 N.W.2d 282, 290–291 (1965), we stated:

As we indicated in *Beka v. Lithium Corp. of America,* 77 S.D. 370, 92 N.W.2d 156, the person liable is in default for not paying interest only when he knows or can readily ascertain the exact sum of his indebtedness by computation. Even assuming that the defendants had admitted coverage under their bond they could not have known the extent of their liability until that was determined by the court.

In this case, at the time of trial appellant had no idea as to its liability or the extent thereon, nor does it as I now write. Appellant will know the extent of its liability for the first time when this decision is handed down. The reason for denying interest on a claim is that, where the person liable does not know what sum he owes, he cannot be in default for not paying.

In *Peter Kiewit Sons' Co. v. Summit Construction Co.*, 422 F.2d 242, 273 (8th Cir. 1969), we held:

> In *State ex rel. Farmers State Bank v. Ed Cox & Son*, 81 S.D. 165, 132 N.W.2d 282 (1965) the court refused pre-verdict interest where the principal amount in dispute was the value of work performed under a construction contract. The court did not purport to retreat from the rule in *Beka* but found that the defendants could not have known the extent of their liability under the circumstances therein.

In the case at Bar (also a construction contract case) the parties could not have known the amount of their respective liabilities. The circumstances of the case precluded such a determination.

The trial court awarded judgment to appellee in the amount of $51,015 principal on February 13, 1980. Appellee, however, sued appellant for $76,412.58 on July 29, 1977. Appellee's exhibit #43, dated August 31, 1976, reflects $65,849 as the "gross amount earned to date." It is, therefore, most difficult for me to determine the date that a certain amount of money "vested" on a particular day. For this additional reason, I am constrained to dissent on the award of prejudgment interest.

I am authorized to state that Justice FOSHEIM joins in this concurrence in part and dissent in part.