ESTATE OF LA FLEUR, A. W. LA FLEUR et al., Respondents
v. O. E. LA FLEUR, Adm., Appellants

(215 N.W.2d 653)

(File No. 11260. Opinion filed March 15, 1974)
Order denying petition for rehearing April 17, 1974

**J. B. Shultz, Woods, Fuller, Shultz & Smith,** Sioux Falls, for objectors and respondents.

**John F. Murphy,** Elk Point, **Bogue, Weeks & Rusch,** Vermillion, for claimants and appellants.

HALL, Circuit Judge.

On August 11, 1954, Adlor La Fleur and Sarah La Fleur (Adlor and Sarah) entered into a contract with their son and daughter-in-law, O. E. La Fleur and Lorena La Fleur (O. E. and Lorena). This contract provided that O. E. and Lorena would move in with and care for Adlor and Sarah. For this, Adlor and Sarah agreed to pay to O. E. and Lorena $50 per week from and after October 10, 1951, until both Adlor and Sarah had died. The weekly payment was not required to be kept currently paid. Any such sums accruing were merely to become a claim against the estate of the last to die of the elder La Fleurs. There was no contractual provision to allow interest on the accruing unpaid weekly charges. They were not to be a current debt.

At the death of Adlor in November 1954, a family dispute arose in regard to his estate; as to who would be his administrator; as to the validity of certain deeds Adlor had executed; and as to the validity of the August 11, 1954 contract described above. This dispute involved Sarah, O. E., and the other seven surviving children of Adlor and Sarah.

In a compromised settlement of this family dispute a contract was negotiated between Sarah .and O. E. and the other seven remaining La Fleur children in December 1954.

This December contract provided that to settle the above-described "family controversy," the following provisions would ensue: That O. E. and Charles La Fleur would be appointed joint administrators of the Adlor La Fleur estate, to which no

family member would continue to object; that the deeds previously executed by Adlor would be accepted; that O. E. would continue as business agent of Sarah's estate with annual accounting to all parties; that O. E. and Evon Handfield (a daughter) would be paid $1,000 each; that Sarah would make a will devising the residue of her estate to all the children in equal shares after payment of creditors' claims; and that the August 11, 1954 contract was ratified and incorporated into this contract, with O. E. and Lorena to "be paid from funds in the possession of Sarah La Fleur (as to) all amounts due them under the terms and provisions of said contract to date and that any amount accruing to the said O. E. La Fleur and Lorena La Fleur under the terms of said contract for the care of Sarah La Fleur in the future be paid by the said Sarah La Fleur either from moneys in her possession or that such sums as may be due under the terms of such contract shall become a lien upon the assets of her estate."

It is alleged by O. E. that subsequent to this December family settlement contract, his mother, Sarah, orally agreed to modify the August 11, 1954 contract and agreed that any unremitted $50 weekly compensation would be subject to annual interest. This oral agreement is corroborated by the execution of 11 promissory notes by or on behalf of Sarah, in a total amount of $31,200 principal, with interest at 6%, these notes having been executed over a period of time from July 5, 1955 to October 10, 1968. There is no contention that all parties to the December family settlement contract were informed of or consented to the change providing for such interest.

Sarah died September 30, 1969, at the age of 103, and O. E. was appointed special administrator of her estate. He presented a claim against her estate based on his August 11, 1954 contract as modified by the alleged agreement to pay annual interest, and his claim included a demand for payment of interest accruing before her death, in addition to the principal.

This claim was objected to by the three objectors-respondents in this case on the grounds that the August 11, 1954 contract which had been adopted by and incorporated into the family settlement contract of December 1954 did not provide for interest payments, and that the December family settlement contract

could not be varied without the informed consent of all the parties. O. E. contended that there could be an oral modification of a written contract and that the August 11, 1954 contract was not in any manner associated with the December contract and could, therefore, be changed without the objectors' consent.

Various hearings were held by the district county court, and on May 18, 1971, the district county court issued its decision upholding the claimants-appellants' claim for principal plus interest claimed to have accrued before Sarah's death, making the total amount of the allowed claim $50,394.80.

The objectors-respondents obtained trial in the circuit court in which all the evidence and transcripts of the district county court hearings were received in evidence. The circuit court, by its memorandum decision of August 22, 1972, reversed the district county court and allowed the claimants-appellants $33,650 ($50 per week without interest .from October 10, 1951 to September 30, 1969), less certain payments, with interest only from the date of Sarah's death.

From the circuit court's ruling, the claimants-appellants have appealed, thus framing the issues for our adjudication.

It is apparent from the record that the principal motivation for the December 1954 contract was the settlement of a family controversy which existed between the La Fleurs in relation to Adlor's estate. Family disagreement threatened their peaceful coexistence to such an extent that judicial conflict was imminent. To bring harmony back into the lives of the La Fleur family O. E. and Sarah contracted with all the remaining children as to the matters previously outlined. The remaining children, including the objectors-respondents, relied on the December contract as it incorporated and ratified the August 11, 1954 contract to protect their interest in a residuary estate. They knew a claim based on the contract of August 11, 1954, might be the principal claim on the estate of Sarah and sought to protect the residue. They gave up their previously initiated attack on the administration, deeds and the August 11, 1954 contract in consideration for the settlement reached.

■ That settlement of controversies which threaten the peaceful existence of family units is favored by the courts is elementary. Ewing v. Waddington, 1933, 62 S.D. 166, 252 N.W. 28; Norman v. Miller, 1918, 40 S.D. 399, 167 N.W. 391; Korte v. O'Neill, 1914, 34 S.D. 241, 148 N.W. 12; Annotation 29 A.L.R.3d 8; 31 Am.Jur.2d, Executors and Administrators, §§ 12 to 20. The law favors compromise and the courts seek to effectuate and encourage the same, especially when relating to family matters and estates. Norman v. Miller, supra.

■ Once a contract is formed to effectuate the settlement of a family controversy which relates to an estate it should be given the full force and effect of any legal contract. Ewing v. Waddington, supra; Annotation 29 A.L.R.3d 8. When the December 1954 contract was entered into by all the members of the La Fleur family, it incorporated the deeds and the August 11, 1954 contract by reference. According to the August 11, 1954 contract, no interest was to be charged at that time. Any change in either the deeds or the August 11, 1954 contract was, in effect, a change of the December 1954 family settlement. A change of the December 1954 contract, as with any other contract, could only be effectuated by an agreement of *all* the parties. Rimer v. Hubbert, 1969, Mo.App., 439 S.W.2d 5; 17 Am.Jur.2d, Contracts, § 465.

■ The facts reflect that the oral agreement between O. E. and Sarah, which allegedly added interest to the prior agreement, was negotiated solely between themselves. The other parties of the December 1954 contract were not consulted. Without the consent of all the members of the December 1954 contract the addition of interest to the terms of the August 11, 1954 contract was ineffectual.

Even though, as claimants-appellants contend, Sarah could have sold her farm or other assets without the consent of the other family members, she could not without their consent change the terms of her contract entered into in December 1954. Because the August 11, 1954 contract was made an integral part of the December contract by full ratification and incorporation it could not be changed without the consent of all the parties.

 The terms of both the August and December contracts provided that any unremitted $50 weekly payments would merely become a claim or lien against the estate of the last to die. The accruing sums were not, therefore, current debts. They were not due until the death of Sarah. And because no mention of interest previous to allowing a claim against the estate is made in either contract, and because interest in absence of an expressed contractual provision will only be allowed after an obligation has matured the claimants-appellants are entitled to interest only from the date of Sarah's death. Lines v. Potter, 1920, 42 S.D. 463, 176 N.W. 150; SDCL 54-3-5.

The trial court's decision holding that the December 1954 family settlement contract could not be modified except with the consent of all the parties, therefore, allowing the claimants-appellants only the principal of $33,650 after the appropriate adjustments and interest only from the date of Sarah's death on September 30, 1969, was correct and is, hereby, affirmed.

All the Justices concur.

HALL, Circuit Judge, sitting for DUNN, J., disqualified.