**Donald HAGEMAN, Plaintiff and Appellant,**

v.

**Gene VANDER VORSTE, Defendant and Appellee.**

**Nos. 15297, 15320.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 24, 1986.

Decided April 1, 1987.

---

David A. Von Wald, Hoven, for plaintiff and appellant.

T. Michael Carter, Pierre, for defendant and appellee.

FOSHEIM, Retired Justice.

The trial court determined that plaintiff (appellant) was entitled to recover $9,333.03

from defendant, as a result of their purchase and sale of livestock as partners or joint venturers. The trial court also awarded costs but refused to award appellant prejudgment interest on his recovery and he appeals. We reverse.

From 1976 to 1978 the parties were involved in numerous "cattle deals" in which they bought and resold cattle together. Defendant's wife did the bookkeeping for them. In 1979 the parties attempted to have an accountant audit their transactions. This audit ended with a transaction in March 1978. Both parties generally agreed at trial that this audit did not contain complete information about the transactions between them. One transaction that appellant failed to account for was the purchase of approximately $23,000 worth of cattle that resulted in a $1,041.12 loss to the partnership. Appellant produced the purchase records, the check used for this purchase of partnership cattle, and the deposit slip for the proceeds of their sale, which occurred a few days after their purchase. Defendant admitted he knew of this purchase. In another transaction appellant pocketed $108 he received from the resale of some partnership cattle to appellant's brother-in-law. Appellant and defendant had traveled together to a livestock auction to purchase these cattle and after discussing their resale a day later defendant agreed the cattle could be resold to appellant's brother-in-law. Both of these transactions occurred in April 1978, a month after the last dated entry in the 1979 audit.

There were also other partnership transactions that defendant failed to reveal for the 1979 audit. These transactions were not revealed until depositions were taken in May 1984.

The trial court found that the final amount due appellant was "not ascertainable at the time of the audit because both parties failed to supply the full amount of the figures involved in the transactions."[1]

1. Although the trial court's ultimate findings would have been clearer if they had been made

Appellant contends that the trial court should have awarded him prejudgment interest because the amount he was entitled to recover was "certain or capable of being made certain by calculation." SDCL 21–1–11.[2]

In an earlier decision on the issue of prejudgment interest we said:

The reason for denying interest on a claim is that where the person liable does not know what sum he owes, he cannot be in default for not paying. When the exact sum of the indebtedness is known or can be readily ascertained the reason for the denial of interest does not exist.

*Beka v. Lithium Corp. of America,* 77 S.D. 370, 375, 92 N.W.2d 156, 159–160 (1958). In applying a statute identical to SDCL 21–1–11, the California courts have recognized the *Beka* rationale for awarding prejudgment interest and have formulated a useful test to decide the question. "The test we glean from prior decisions is: did the *defendant* actually know the amount owed or from reasonably available information could the defendant have computed that amount. Only if one of those two conditions is met should the court award prejudgment interest." *Chesapeake Industries v. Togova Enterprises,* 149 Cal. App.3d 901, 907, 197 Cal.Rptr. 348, 352 (1983); *see also Amert v. Ziebarth Constr. Co.,* 400 N.W.2d 888 (S.D.1987).

█ In this case the parties obviously undertook the 1979 audit to accurately ascertain the financial status of their partnership and to determine whether either of them owed (or was owed) any amount. Although the parties clearly were careless in maintaining records of their "cattle deals" and did not supply the accountant with all

necessary figures, the exact amount of the undisclosed transactions could have been ascertained to the penny. As far as the transactions that defendant failed to disclose, he had this information within his control and was capable of ascertaining the amounts. Furthermore, with the revelation that defendant himself overlooked some transactions that had occurred after the last dated entry on the audit, a reasonable inquiry by defendant would have also turned up the other figures appellant failed to provide. Defendant himself clearly recalled the April 1978 discussion with appellant concerning the sale of one bunch of livestock to appellant's brother-in-law. And absolutely no dispute existed over the amount appellant pocketed on this sale— $108, which also could have easily been ascertained through the brother-in-law. Defendant also admitted that he was aware of appellant's purchase of the other bunch of livestock, which resulted in a $1,041.12 loss from the sale of $23,153.34 worth of livestock. With this awareness of such a significant purchase of livestock, defendant could have easily ascertained the amount necessary to fully account for the transaction by making a reasonable inquiry about the result of the sale, which would have revealed the purchase record, the check, and the deposit slip. The parties did not dispute these amounts or the fact that they were partnership transactions. Although the parties may have made it difficult for an accountant to audit these transactions, defendant could have readily ascertained the amounts involved from reasonably available information. Hence, the trial court was clearly erroneous in finding that the amount was not ascertainable.

in the terms used by SDCL 21–1–11, we regard its finding that the amount was "not ascertainable" as equivalent to a finding that the amount was not "certain, or capable of being made certain by calculation." *See Fischer v. Gorman,* 65 S.D. 453, 274 N.W. 866 (1937) (finding of principal's mental incompetency and incapacity to contract as a statutory basis for termination of agency); *Donohue v. Jennings,* 334 N.W.2d 683 (S.D.1983) (finding of filing and service of attorney's lien as required by statute for an effective lien).

2. SDCL 21–1–11 provides:

Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor, from paying the debt.

Contrary to defendant's contention, this is not a case where prejudgment interest should have been denied because damages were uncertain until determined by the trier of fact. *See Arcon Constr. Co. v. South Dakota Cement Plant*, 349 N.W.2d 407, 416–417 (S.D.1984) (in breach of contract action for failure to deliver construction material to contractor, damages based on "averages, estimates, and blue book rental rate guidelines" of idled construction equipment); *Fullerton Lumber Co. v. Reindl*, 331 N.W.2d 293 (S.D.1983) (damages for loss of pigs based solely on estimate of number of pigs lost, and for roof repairs based on 1981 construction estimate where damages vested in 1977); *Hanson v. Funk Seeds Int'l*, 373 N.W.2d 30 (S.D.1985) (damages for lost crop yield based on prior year yields, which varied from year to year); *Hepper v. Triple U Enterprises, Inc.*, 388 N.W.2d 525 (S.D.1986) (sellers not entitled to prejudgment interest on damages arising from buyers' breach of contract for purchase of buffalo where trial court ordered sums due sellers to be offset by any damages on buyers' claim for breach of warranty, which was based on "expected" calving rate of between eighty and ninety percent over four years). The calculation of damages in these cases had elements of uncertainty that are difficult to characterize, except to say that the evidence could have given the fact finder several reasonable choices of the amount of damages.

In contrast, we have permitted recovery of prejudgment interest in cases where the element of uncertainty was greatly reduced. *See Amert, supra, citing Barton Masonry, Inc. v. Varilek*, 375 N.W.2d 200 (S.D.1985) (home improvements calculated from invoices); *Dougherty v. Beckman*, 347 N.W.2d 587 (S.D.1984) (construction cost of townhouse with an agreed price plus undisputed costs of extras); *Beka, supra* (contract specified amount of and price of ore to be delivered, less undisputed evidence of delivery cost); *see also North-*

*western Engineering Co. v. Thunderbolt Enterprises*, 301 N.W.2d 421 (S.D.1981) (receivables for construction work performed pursuant to contract, including addition of amount retained, deduction for payments made, and offset for other work).

Where the amount for sought recovery even though not liquidated, is based upon the readily ascertainable value of services or property, the general and better considered rule is to allow interest, at least in the absence of strong equities to the contrary. *Aetna Casualty Ins. Co. v. United States*, 365 F.2d 997 (8th Cir. 1966). Interest is allowable on damages if there exists established or reasonably ascertainable market prices or values on the subject matter by reference to which the amount due may be determined by computation. *Barton, supra; Dougherty, supra; Beka, supra; Gearhart v. Hyde*, 39 S.D. 273, 164 N.W. 58 (1917). *Amert, supra,* at 890. The amount defendant owed appellant was readily ascertainable from the available records of the purchases and sales of the cattle and from a reasonable inquiry of defendant or his brother-in-law.

■ Defendant argues that when the trial court found that the amount due was not ascertainable because neither party supplied complete information this was equivalent to a finding that defendant, as debtor, was prevented by the act of the creditor, (appellant) from paying the debt. *See* SDCL 21–1–11, fn. 2, *supra.* Defendant contends this finding also prevented appellant from recovering prejudgment interest under the statute. As we have said, we interpret the trial court's findings as having determined the issue of the *certainty* of the amount of damages. No finding was proposed to the trial court using the "act of the creditor" language of the statute and we cannot fairly say this issue was presented to the trial court for its consideration or that the issue was preserved for appeal.[3] *See* SDCL 15–26A–8; *Burke v. Lead-Deadwood School Dist.*, 347 N.W.2d 343 (S.D.1984). Since the trial court did

---

**3.** All necessity for having to interpret the trial court's findings would have been avoided if the parties had proposed ultimate findings in the

language of the statute. *See* fn. 1. Another confusing finding by the trial court was that the parties were both "estopped" from recovering

not clearly have this issue before it we will not consider it on appeal.

The trial court's judgment is reversed and remanded for a determination of the interest due.

WUEST, C.J., and MORGAN and SABERS, JJ., concur.

HENDERSON, J., dissents.

MILLER, J., not having been a member of the court at the time this action was submitted to the court, did not participate.

HENDERSON, Justice (dissenting).

If Plaintiff/Appellant is filled with uncertainty with what he has coming, and is, additionally, smitten with no desire to render a true and fair accounting, how can Defendant/Appellee be filled with certainty regarding what is owing? These are almost the exact words used in the closing sentence of my dissent in *Amert v. Ziebarth Constr. Co.*, 400 N.W.2d 888, 892 (S.D.1987). Again, I believe the trial court is right and the majority opinion is wrong on its determination of prejudgment interest. I would affirm and not reverse the trial court.

Reliance is placed upon two of my writings which were majority opinions in this Court: *Meyer v. Dixon*, 369 N.W.2d 658, 659 (S.D.1985), and *Hanson v. Funk Seeds Int'l*, 373 N.W.2d 30, 36 (S.D.1985). *See also Cole v. Melvin*, 441 F.Supp. 193, 210 (D.S.D.1977). However, my basic rationale emanates from the granddaddy of the prejudgment interest cases, namely, *Beka v. Lithium Corp. of America*, 77 S.D. 370, 375, 92 N.W.2d 156, 159–60 (1958), which states: "The reason for denying interest on a claim is that where the person liable does not know what sum he owes, he cannot be in default for not paying."

Need I emphasize that neither party provided the full amount of dollar figures that would have allowed a final tabulation of an amount owing between the parties? There was great uncertainty and confusion between these two men concerning profits and losses; for this reason, they agreed to take all records to an accountant. Plaintiff/Appellant testified, *inter alia*, that he failed to give certain records to the accountant and that some of these records were in his possession. For example, Plaintiff/Appellant failed to provide the accountant with records showing a partnership loss of $1,041.12 and a $108.00 profit pocketed by him on another transaction. Defendant/Appellee was also less than completely honest with the accountant. In fact, only depositions revealed a sizeable profit which inured to the benefit of Defendant/Appellee.

Judge McKeever heard all of this testimony and noted, in concluding language, that a final amount due Plaintiff/Appellant was potentially ascertainable. However, he also noted that neither party would/did provide a full amount of figures. An example, other than the above, was Plaintiff/Appellant's failure to provide an amount of money his brother-in-law had paid him for transportation, which amount had already been paid by Defendant/Appellee. This amount was discovered shortly before or during trial. It is a fair statement to say that both parties did not provide a full accounting to each other prior to trial. Without any doubt, neither party knew the outcome of the trial/amount of the damage award until the trial judge made a final decision, sorting out all the facts, claims, transactions, dealings, and documents existing which pertained to the litigants' business affairs.

Until the trial judge made a final decision, sorting out all the facts, claims, transactions, dealings, and documents existing which pertained to the litigants' business affairs and which arose from testimony, could Defendant/Appellee actually know the amount owed? Also, Defendant/Appellee did not have "reasonably available information" by which he could have computed the true amount owed because Plaintiff/Appellant exclusively had this information in his possession and withheld it.

interest. We are unable to recall having ever used an estoppel theory to analyze the right to

recover prejudgment interest.

Here, under these circumstances, it was not "clear that the plaintiff is entitled to recover a sum certain, or that the damages sought are capable of being made certain by calculation. . . ." *Amert v. Ziebarth Constr. Co.,* 400 N.W.2d at 892 (Henderson, J., dissenting). When neither party would divulge the transactions to one another, it was impossible to calculate the damages with certainty. Only the trial judge, by sifting and sorting, could determine the damages. *See Fullerton Lumber Co. v. Reindl,* 331 N.W.2d 293 (S.D.1983). When there is noncooperation, concealment, and suggestion of behind-the-back deals, how can any court hold that the "right to recover [is] vested in [a] plaintiff on a particular day"? *Amert,* 400 N.W.2d at 892 (Henderson, J., dissenting).

In *Chesapeake Indus. v. Togova Enterprises,* 149 Cal.App.3d 901, 907, 197 Cal. Rptr. 348, 352 (1983), cited in the majority opinion, I note that said court acknowledged prior California decisions which opined " 'where an accounting is required in order to arrive at a sum justly due, interest is not allowed.' " 149 Cal.App.3d at 908, 197 Cal.Rptr. at 352 (citations omitted). *See also* 23 Cal.Jur.3d *Damages* § 91 (1975). This could be an easy solution to this case, but I hasten to point out two factors: (1) This is not a lawsuit on an accounting; and (2) the court in *Chesapeake Indus.* held that an accounting did not foreclose the possibility of prejudgment interest. However, in *Chesapeake Indus.,* prejudgment interest was not permitted because of the circumstances of the accounting and the amount due was not sufficiently capable of being made certain.

Let us peruse a rather lofty thought expressed in *Subsurfco, Inc. v. B–Y Water Dist.,* 369 N.W.2d 129, 131 (S.D.1985):

"Interest, as a part of damages, is allowed, not by application of arbitrary rules, but as a result of the *justice of the individual case. . . .*"

*Id.* (quoting 22 Am.Jur.2d *Damages* § 179 (1965)) (emphasis supplied). Upon that language, I rationally defend Judge McKeever's decision. He tempered arbitrary rules with common sense and "justice of the individual case." Were the judgment en-

tered in favor of Defendant/Appellee, i.e., were the tables reversed, yet, I would deny prejudgment interest for the reason that the parties created a situation which begot uncertainty. Judge McKeever recognized that the ultimate balance or figure was ascertainable and specifically expressed that under most circumstances, interest would accrue per South Dakota law. He reasoned that the final figure or amount due and owing was unascertainable until trial because of both parties' conduct. Finding of Fact V reads:

That the final amount due Plaintiff was not ascertainable in 1979 when both parties provided figures to the agreed upon accountant, because neither party supplied the full amount of figures that would have allowed a final tabulation until trial or shortly before through discovery.

Conclusion of Law V reads:

Due to the actions of both parties not supplying all of the figures to the accountant, both parties are estopped from any interest on any judgment due either under the original claim or had the Defendant been successful on his counterclaim.

These are not clearly erroneous. *In re Estate of Hobelsberger,* 85 S.D. 282, 181 N.W.2d 455 (1970). I am not convinced that a mistake has been made. The word "estopped" does not mean that the trial judge used any doctrine of equitable estoppel, estoppel in pais, promissory estoppel, or detrimental reliance. He might well have utilized the word "precluded." The driving force behind the trial judge's use of the word "estopped" is that he believed the actions of each party had caused confusion and uncertainty, thereby mandating the denial of prejudgment interest. These disputants, by their procedural and substantive weaknesses, precipitated conflict which settled in our courts and the resolution of this conflict by the offices of the circuit court judge was fair and just.