**SOUTH DAKOTA BUILDING AUTHORITY, Plaintiff and Appellant,**

**v.**

**GEIGER–BERGER ASSOCIATES, P.C., A Foreign Corporation; Billy R. Beck, H. Blake Holman and Jean R. Kroeger, II, d/b/a Fritzel Kroeger, Griffin & Berg, A Partnership, Defendants and Appellees.**

**Nos. 15141, 15158, 15162, 15173, 15175, 15178.**

Supreme Court of South Dakota.

Argued Sept. 16, 1986.

Decided Oct. 14, 1987.

Rehearing Denied Dec. 4, 1987.

Thomas J. Welk and Gary J. Pashby, of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, for plaintiff and appellant.

Harold C. Doyle and John A. Hurley, of May, Johnson, Doyle & Becker, Sioux Falls, for defendant and appellee Geiger–Berger Associates, P.C.

John Simko, of Woods, Fuller, Shultz & Smith, P.C., Sioux Falls, for defendant and appellee Fritzel, Kroeger, Griffin & Berg; Timothy J. Bjorkman, of Woods, Fuller, Shultz & Smith, P.C., on the brief.

TICE, Circuit Judge.

### JURISDICTIONAL STATEMENT

Appellant, South Dakota Building Authority, appeals from an order denying prejudgment interest. Appellee Fritzel, Kroeger, Griffin and Berg filed a notice of review appealing the trial court's refusal to grant judgment notwithstanding the verdict on the issue of indemnity and on the grounds of estoppel. We affirm.

### FACTS

In 1972, the University of South Dakota began the creation of a new physical education facility ultimately known as the Dakota Dome (Dome). The South Dakota Building Authority (Authority) is the legal owner of the Dome. Authority supervised its construction and entered into contracts for its building.

At the outset, Authority asked Fritzel, Kroeger, Griffin and Berg (Architect or defendants) for their opinion as to the best manner in which an enclosed field facility could be designed. Architect initially recommended against an air supported dome system, and ultimately, arranged for the issuance of bids on an enclosed steel struc-ture. After bidding, it was found that the proposed closed steel structure would cost more than the available funds. These bids were rejected. Architect then recommended a conventional field house with an open field.

The Board of Regents, anxious to obtain an enclosed structure, requested that Architect hire Geiger–Berger Associates, P.C. (Engineer or defendants) to do a preliminary study of an air supported roof design. Ultimately, Authority and Architect contracted for the design and building of an air supported roof system. Architect then contracted with Engineer for the design of the air supported roof system.

During the course of the construction, the roof failed once. After construction was completed and the Dome was turned over to Authority the roof collapsed or tore on three occasions. These failures appeared to be the direct result of the inability of the snow melt system to adequately remove the snow accumulations.

### Statement of the Case

Authority commenced this action against Engineer and Architect based upon breach of implied warranty, negligent misrepresentation, breach of contract, common negligence, and breach of implied contract. Engineer denied the allegations and alleged contributory negligence, assumption of risk, and failure to mitigate damages. Architect likewise denied the allegations and alleged contributory negligence, assumption of risk, estoppel, vicarious liability, and satisfactory performance in the contract. Architect further, by way of crossclaim, sought both contribution and indemnity from Engineer.

Authority's original complaint recited no damage figure. On January 3, 1985, in an answer to an interrogatory concerning damages, Authority itemized damages in the amount of $461,464.26, but indicated that this was not a final damage figure. On April 8, 1985, Authority moved to amend its complaint stating that damages were still unascertained, but would be in excess of $500,000.00. On May 15, 1985, five days prior to trial, Authority amended

its original answer to interrogatories, changing its damage figure from $461,464.26 to $454,760.64. During the course of the trial, Authority, through exhibits, set forth its damages in the amount of $464,160.64. No significant factual dispute was raised concerning the existence or the amounts of the line items of damages set forth in Authority's primary damage exhibit. The jury awarded Authority $325,261.44 for past damages and $46,920.00 for future damages.

Authority, subsequent to trial, moved for prejudgment interest on the verdict for past damages. Authority suggested five alternative methods for determining interest:

1) interest accrued after the commencement of the action in circuit court of eighteen percent to the day of judgment;

2) interest accrued after the subrogation action commenced October 24, 1983, to the date of judgment at eighteen percent;

3) interest accrued only on the amount allocated to past damages of 70.07% of the total recovery and attributed proportionately to each damage item past or future;

4) interest accrued on the first item of damages sustained and each subsequent item incurred thereafter up to an amount in damages equal to the verdict;

5) interest accrued on the last item of damage and each previous item accrued up to an amount in damages equal to the jury verdict.

Authority argued that damages of $464,160.64 were ascertainable before trial and evidenced by Authority's damages exhibit. The trial court denied Authority's motion for interest as being uncertain under SDCL 21-1-11. The trial court did allow interest on the verdict amount from the date of verdict to the date of judgment.

Architect moved for a judgment notwithstanding the verdict on the issue of indemnity. The trial court denied the motion.

## ISSUES

### I.

DID THE TRIAL COURT ERR IN DENYING AUTHORITY'S MOTION FOR PREJUDGMENT INTEREST? WE ANSWER NO.

### II.

DID THE TRIAL COURT ERR IN DENYING ARCHITECT'S MOTION FOR INDEMNITY FROM THE ENGINEER? WE ANSWER NO.

### III.

DID THE TRIAL COURT ERR IN DENYING THE ARCHITECT'S MOTION FOR A DIRECTED VERDICT ON ESTOPPEL? WE ANSWER NO.

## DECISION

### I.

DID THE TRIAL COURT ERR IN DENYING AUTHORITY'S MOTION FOR PREJUDGMENT INTEREST?

The issue of prejudgment interest is a complex one. To consider it one must start at its origin. The Civil Code of 1877 provided for prejudgment interest awards under two sections now codified as 21-1-11 and 21-1-13. CivC 1877, § 1943, CL 1887, § 4577. The provisions exist today in essentially the same form as they did originally. *See Uhe v. Chicago, M. & St.P.Ry. Co.,* 4 S.D. 505, 57 N.W. 484 (1894); *Uhe v. Chicago, M. & St.P.Ry. Co.,* 3 S.D. 563, 54 N.W. 601 (1893); *Corcoran v. Halloran,* 20 S.D. 384, 107 N.W. 210 (1906).

SDCL 21-1-11 provides that:

Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor, from paying the debt.

SDCL 21-1-13, on the other hand, provides that: "In an action for the breach of

an obligation not arising from contract, and in every case of oppression, fraud, or malice, interest may be given, in the discretion of the jury."

■ In applying these statutes we have continually emphasized that their fundamental purpose is to do justice to one who has suffered a loss at the hands of another. *Clark County v. Howard*, 58 S.D. 457, 237 N.W. 561 (1931). In other words, when a person retains money by failing to pay for a loss he causes, such person should be charged interest upon the sum he refuses to tender to the injured party. *Gearhart v. Hyde*, 39 S.D. 273, 164 N.W. 58 (1917). The payment of such sum ought to become due at the time of the injury or loss and failure to do so is then a wrongful detention of the injured person's money. *Bunkers v. Guernsey*, 41 S.D. 381, 170 N.W. 632 (1919). The prejudgment interest award seeks to compensate the injured party for this wrongful detention of money owed. *Id.*

■ The general rule under SDCL 21-1-11 provides for an award of prejudgment interest when the amount payable can be readily ascertained by calculation, with reference to well-known standards of customary market values. *Gearhart, supra.* This rule is based on the principle that a person who causes damages to another cannot be required to pay money where he cannot ascertain how much he ought to pay with reasonable exactness. *Id.* Alternatively, under SDCL 21-1-13 the jury may determine whether prejudgment interest should be awarded, and if so, how much. *See also Uhe, supra,* 54 N.W. at 602.

SDCL 21-1-11 and SDCL 21-1-13 were intended to apply to different actions. Originally, SDCL 21-1-11 related strictly to contract actions. *Bethel v. Janis*, 597 F.Supp. 56 (D.S.D.1984). SDCL 21-1-13 applied to actions for damages proper. *Corcoran, supra.* Nevertheless, SDCL 21-1-11 has recently been applied to actions other than contract. Cert. of Question From U.S. Dist. Court re: *Meyer v. Dixon*, 369 N.W.2d 658 (S.D.1985) (interest recoverable for pecuniary loss in personal injury action); *Barton Masonry, Inc. v.*

*Varilek*, 375 N.W.2d 200 (S.D.1985) (interest awarded on costs determined by quantum meruit).

The certainty relating to the day of vesting and amount under contract actions is generally not difficult to establish. As the statute was applied to other types of actions, however, these issues became hazy in our efforts to enact the principles espoused. This is due, in part, to the liberal interpretation of prejudgment interest rules in an attempt to honor the right of a party to receive the moneys he is justly due from another. *Beka v. Lithium Corp. of America*, 77 S.D. 370, 92 N.W.2d 156 (1958); *Gearhart, supra.*

The case before us clearly displays the conflict that exists in the law relating to prejudgment interest. Authority vigorously asserts that it is entitled to prejudgment interest under any of five theories which it asserts establishes the obligation owed to it to the requisite degree of certainty needed by statute. Each of the five theories produce very different amounts of interest, and yet each of the theories has some validity through previous decisions.

Authority asserts that its damages are certain because Authority's exhibit listing the specific items of damages was uncontested and was derived from bills they were forced to pay to repair the damage done on account of, or at least in part by, the defendants. Two of Authority's theories are that since the damages are specific and uncontested in amount, either the date of filing the complaint ($51,008.12) or the date of the subrogation claim ($104,261.89) starts the ticking of interest since one date or the other constitutes a demand upon the defendants. We have utilized this premise in the past. *Bunkers, supra; Clark County, supra; Safeco Ins. Co. of America v. City of Watertown, South Dakota*, 538 F.Supp. 49 (D.S.D.1982). *See also Hollister v. Donahoe*, 16 S.D. 206, 92 N.W. 12 (1902); *Corcoran, supra* at 210; *Roberts v. Shaffer*, 36 S.D. 551, 156 N.W. 67 (1916).

Alternatively, under its third and fourth theory, Authority asks that interest commence either from the date that Authority first had an obligation to pay out costs

($131,901.66), or the date of the last paid out costs ($103,733.22) on their damages. Such dates have been recognized as valid dates of vesting of a certain amount. *McKenna v. Roberts County*, 72 S.D. 250, 32 N.W.2d 687, 689 (1948) (date of disbursements); *Polaris Industries v. Plastics, Inc.*, 299 N.W.2d 414, 418 (Minn.1980) (date each item of expense incurred). *Fullerton Lumber Co. v. Reindl*, 331 N.W.2d 293 (S.D.1983) (when the plaintiff should have mitigated his damages); *Shaffer v. Honeywell*, 249 N.W.2d 251 (S.D.1976) (upon the happening of the injury itself).

However, in the case at hand, neither solution is reasonable. Neither would properly compensate Authority for the loss of use of funds which were owed by the defendants. Since Authority was found to be partially responsible for its losses by the jury, to award Authority prejudgment interest from the date they paid an expense in total would result in Authority receiving interest on money it was not entitled to receive. This would result in Authority reaping a windfall at the expense of the defendant as the defendants were obligated to only pay a portion of the losses sustained at the time. By the same token, it would not be consistent with the principle of restitution, if that is the sole principle involved, to award prejudgment interest only after all of the damages have been incurred by Authority. Defendant would then incur a windfall and would not fairly compensate Authority for expenses it incurred prior to the final expense.

The last alternative Authority suggests is to grant prejudgment interest on each item of damage when it was billed to Authority at a rate of 70.07% ($111,284.92). This percentage is derived from the total amount of damages less a reduction based upon the jury verdict, accountable apparently to the jury findings of Authority's comparative fault. This approach is not one which we have dealt with in the past.

In all of Authority's proposals, other than the 70.07% solution, the date of vesting and certainty of amount are inextricably intertwined. Prejudgment interest is based on the principle that one should not hold onto the money he owes another when that amount is reasonably ascertainable on a date certain. *Gearhart, supra.* Assuming liability for the sake of applying prejudgment interest, one would expect the obligor to in effect reach in his pocket and hand over to the obligee an amount he can reasonably anticipate he will ultimately be held to pay to compensate for the loss sustained by the other. *Hanson v. Funk Seeds Int'l*, 373 N.W.2d 30 (S.D. 1985); *Cole v. Melvin*, 441 F.Supp. 193 (D.S.D. 1977) (test is, assuming liability, whether damages are reasonably ascertainable). But for Authority's comparative negligence, this could have reasonably been done.

At the time Authority was obligated to pay those who repaired the Dome, the cost of repair was reasonably certain. Also, at that time, there was no real question that the repairs were related to the roof's failure, nor was there any question that the repairs and the cost thereof were reasonable. Therefore, Authority's loss became liquidated upon receiving the billing for the repairs, and upon paying for such repairs. It was at that time Authority was denied the use of money due it from defendants. If Authority's claim was not clearly liquidated at the time of the injury, it became so at the time the billing for the repairs were submitted.

█ Authority is not required to make a demand for payment of the repairs upon defendants. The demand requirement is essential only where the person liable can not reasonably know what sum he owes. *Beka, supra* at 159. *Jones v. Jenkins*, 277 N.W.2d 815 (Wis.1979); *Safeco, supra; Aetna v. Studer & Sons*, 365 F.2d 997 (8th Cir.1966). The issue is not whether or not the person liable knew he was liable, but whether assuming liability he knew with reasonable certainty the extent of the physical loss. *Amert v. Ziebarth Constr. Co.*, 400 N.W.2d 888 (S.D.1987). *Potter v. Hartzell Propeller, Inc.*, 291 Minn. 513, 189 N.W.2d 499 (1971); *State ex. rel. Farmers State Bank v. Ed Cox and Son*, 81 S.D. 165, 132 N.W.2d 282 (S.D.1965); *Fullerton, supra.*

This knowledge may be constructive or actual. In contract actions, a demand is generally not necessary because the person liable is deemed to have knowledge of the breach. *Beka, supra; Garber v. Haskins,* 84 S.D. 459, 172 N.W.2d 721 (S.D.1969); *In re La Fleur's Estate,* 88 S.D. 97, 215 N.W.2d 653 (S.D.1974); *Lien v. Lien,* 278 N.W.2d 436 (S.D.1979); *American Property Services, Inc. v. Barringer,* 256 N.W.2d 887 (S.D.1977). Pecuniary loss incurred in personal injury actions is also deemed known. *Certification of Question, supra.* In these cases, we did not toll interest during the time no demand was made.

Demand has been required only where the person liable would not otherwise know of the loss. In these cases, interest accrues only after notification of the loss, presentation or a demand for payment is made. *Clark County, supra* (date demand for insurance benefits); *North River Ins. Co. v. Golden Rule Constr., Inc.,* 296 N.W.2d 910 (S.D.1980) (date insurance coverage refused); *Bunkers, supra* (mistake in sale contract, interest accrued date person liable was notified thereof and if no notification, date action filed). *Amert, supra* (date an objective measurement of loss submitted to defendant).

Unfortunately, these cases do not provide an answer for the case before us. Defendants asserted that Authority was contributorily negligent, and the jury clearly found that Authority bore a portion of the blame since there was a clear reduction of the damages defendants were obligated to pay. We can find no similar situation in our case law, nor the case law of any other jurisdiction.

In the past, we have considered the application of setoffs and counterclaims as they relate to prejudgment interest. In 1980, with little discussion, we found the amount on the claim was certain although there was a slight setoff allowed for premiums due the other party. *North River, supra.* Four years later in *Williams Ins. Agency v. Dee-Bee Contracting Co.,* 358 N.W.2d 231 (S.D.1984), we allowed recovery of prejudgment interest to both the plaintiff and the defendant on liquidated claims, al-though the trial court originally denied such interest. In *Williams,* we awarded the interest after we reversed the trial court on its finding that there was contributory negligence, which presumably was its basis for denial of prejudgment interest.

The following year, while we denied a request for prejudgment interest where the interest claim was made against a greater amount of liquidated damages, we nonetheless reiterated our position that interest should not "be precluded by the fact that the party against whom it is asserted may have put forward an unliquidated setoff or counterclaim." *Subsurfco, Inc. v. B–Y Water Dist.,* 369 N.W.2d 129, 131 (S.D. 1985). Under circumstances where the setoff is more than adequate to liquidate the items for which prejudgment interest is requested, there is "no unlawful detention of money" and "no money improperly retained, detained or withheld." *Id.* at 131.

We have recently diverted from these decisions. In *Hepper v. Triple U Enterprises, Inc.,* 388 N.W.2d 525 (S.D.1986), against an unliquidated award of $286,000, defendant requested prejudgment interest on its liquidated damages of $202,000. Without elaboration, we simply said defendant's "damages arising from Heppers' breach of contract were not certain ... until the jury returned its verdict." *Id.* at 531. We denied interest without further discussion of the underlying issues. Primarily relying upon *Hepper,* we again denied prejudgment interest where a liquidated claim of $7,222,530 was set off by an unliquidated counterclaim award of $300,-000. *Kehn Ranch, Inc. v. Milbank Mutual Ins. Co.,* 394 N.W.2d 709 (S.D.1986).

In these recent decisions, as well as in our previous decisions we have held that where damages are uncertain until a jury has reached a decision, prejudgment interest cannot lie. *Fullerton, supra; Amert, supra.* Our sister state of Nebraska, in dealing with case law which parallels our statute, decided against prejudgment interest in a car/bus accident where the jury found contributory negligence on the part of the plaintiff. The court stated "[T]he damages claimed were unliquidated and

were incapable of determination with reference to the ordinary standards, such as calculation and market value. There was no data from which the liability could be fixed without judicial intervention." *National Fire Ins. Co. of Hartford v. Evertson*, 157 Neb. 540, 60 N.W.2d 638, 640 (1953); See also, *Muller Enterprises Inc. v. Gerber*, 178 Neb. 463, 133 N.W.2d 913 (1965). The uncertainty lies not in the damages themselves, but rather in the proportion of those damages that a defendant caused, which only a jury can decide.

There is a balance which must be struck in applying our prejudgment interest statute. While South Dakota has accepted the principle that prejudgment interest is appropriate to insure full compensation of an injured plaintiff, that right to collect prejudgment interest under 21-1-11 is limited to circumstances where a defendant can ascertain with reasonable certainty what those damages are. Those damages are damages for which the defendant is responsible. It goes without saying that the defendant cannot be responsible for damages which he has not caused. It is, therefore, not a question in this case of what losses did the plaintiff sustain, but rather what does the defendant owe the plaintiff for the damages which the plaintiff sustained. We have very recently stated that "When the person who is liable does not know what sum *he owes*, however, or cannot ascertain the amount he ought to pay with reasonable exactness, then he cannot be in default for not paying." (emphasis added) *Arcon v. S.D. Cement Plant*, 405 N.W.2d 45, 47 (S.D.1987). *See also, Amert, supra; Aetna, supra; Beka, supra; Gearhart, supra.* SDCL 21-1-11 could perhaps more specifically be read, in part, as follows: "Every person who is entitled to recover damages (caused by another) certain, or capable of being made certain . . .". If the extent of damages caused by another are not certain, then prejudgment interest should not lie under this statute.

Since a defendant cannot, with any degree of certainty, tender an amount of damages to a plaintiff until a jury sets the proportionate fault, he cannot be held re-

sponsible for prejudgement interest under 21-1-11.

It should be clearly noted that the issue here is not a setoff or counterclaim, but rather a contributory negligence verdict, and as such there is no way for a defendant to reasonably know what percent of fault a jury would find. It is, therefore, impossible for a defendant to know what it should pay a plaintiff for the damages even though the damages themselves are clear. *Beka, supra* at 159; *Ed Cox & Son, supra* at 291; *Fullerton, supra.* Therefore, the trial court's denial of prejudgment interest to Authority is affirmed.

### II.

### DID THE TRIAL COURT ERR IN DENYING ARCHITECT'S MOTION FOR INDEMNITY FROM THE ENGINEER?

In this case, Authority sought to develop an enclosed arena, capable of housing a football field. The funds available were not adequate to create a traditional structure. Thus, the Authority chose to build the unique air supported roof system, which was the only alternative other than an open football field and a traditional field house. Architect initially advised against the air supported dome. Funds were not available for the alternately proposed enclosed steel structure, however. Authority then insisted that an air supported structure be built and requested Architect proceed to work with Engineer to develop the air supported dome. Architect did so. At the time Architect contracted with Engineer, there were only two domes of an air supported nature in the world, both built by Engineer. The ultimate failure of the Dome structure was the result of a failure of the snow melt system designed by Engineer to remove the snow from the roof which caused its collapse on the three occasions in question.

■ Architect asserts that it is without personal fault for the plans not being adequate. Architect contends that Engineer had the sole and exclusive expertise and responsibility for the preparation of those plans, and that the Architect was simply a conduit of that information to Authority.

We recognize the building of such a facility was unique. We recognize that the Architect originally did not recommend this type of facility, and that the facility was basically mandated by Authority as the only means to create an enclosed football field. The issue before us, however, is what were in fact the responsibility and activities of Architect.

In *Degen v. Bayman,* 86 S.D. 598, 200 N.W.2d 134 (1972), we stated that if an individual is without personal fault, he is entitled to indemnity. One is "without personal fault when he has not participated in the commission of the tort and his liability arises by operation of law. *Pelkey v. State Sales, Inc.,* D.C.Mich., 210 F.Supp. 924." *Degen,* 200 N.W.2d at 137. If, however, "a person seeking indemnity personally participates in an affirmative act of negligence, or is physically connected with an act of omission by knowledge or acquiescence in it on his part, or fails to perform some duty in connection with the omission which he has undertaken, he is deprived of the right of indemnity. *Cahill Brothers, Inc. v. Clementina Company,* 208 Cal.App.2d 367, 25 Cal.Rptr. 301; *Pearson Ford Company v. Ford Motor Company,* 273 Cal. App.2d 269, 78 Cal.Rptr. 279." *Degen* at 137.

In this case, Architect had a contract with Authority which required Architect to prepare design studies and plans. The Architect was also authorized thereunder to "employ specialists, if necessary, *to evaluate and study* special considerations of the project, if such expertise is not available in his organization." (Emphasis added.) Architect contracted with Engineer for the preparations of plans by Engineer of the roof and snow melt system. All of the plans submitted by Engineer to Architect were reviewed by the Architect with the Architect's seal being placed thereupon.

Architect originally crossclaimed against Engineer for both indemnity and contribution. At the time of the trial, Architect dropped its claim for contribution choosing to go exclusively on the basis of indemnity.

A special interrogatory was submitted to the jury stating, "Do you find that defendant Fritzel, Kroeger, Griffin & Berg is liable only because of acts or omissions of Geiger–Berger, and is otherwise without fault?" The jury answered no. Because the jury answered the question in the negative, the issue for the court is whether there was a basis in the record for the jury to find that Architect was at fault in some manner other than through Engineer. It is not for this court to second guess the findings of the jury, but only to determine whether or not some adequate evidence exists from which the jury could draw that conclusion. *Sharkey v. Washington Nat'l Ins. Co.,* 373 N.W.2d 421 (S.D.1985).

The expert for Authority, Dr. Hanson, testified that "The architect has the first order or front line of responsibility to the owner for this particular building." He has "a responsibility to review their work to see that their work is in his opinion satisfactory, ... to ask questions that the owner should be concerned about to be sure that those concerns are raised and properly resolved." Architect, through a letter of its agent, LeRoy Bean, dated February 10, 1976, stated that,

> Since we are prime architects on this project and the Geiger/Berger firm has been hired by us to assist in designing this air supported structure, we feel impelled to clarify the fact that we will not be responsible for any decisions made at any meetings or during any phone calls where our firm is not represented.

Architect, in that letter, suggests that Engineer was assisting Architect and not exclusively responsible for the preparation of those plans.

SDCL 36–18–27.1 requires that all final plans shall "bear the signature, stamp or seal of the architect, professional engineer or land surveyor who was in responsible charge of the preparation thereof." When Architect affixed its seal thereto, it was stating that it was the individual responsible for the preparation of those plans. Architect has suggested that the stamp was simply a mechanical action, indeed, literally a rubber stamp of the plans of Engineer. However, the statute clearly requires that stamp be affixed for a rea-

son. Surely the statute did not intend that it be meaningless, but rather intended that the Architect in affixing his stamp was acknowledging an affirmative obligation to review and insure that the plans were appropriate and architecturally sound.

Under these circumstances, Architect is not simply an agent through whom Engineer's plans passed. Rather, pursuant to the stamp, the contract, and evidence presented in the record, Architect had an obligation to create, prepare, and develop architecturally sound plans. While Architect may have felt that it did not have the expertise to properly review these plans, and therefore, only acted in a passive capacity, as we stated in *Degen*, 86 S.D. at 604, 200 N.W.2d at 137, "An act of omission as well as one of commission on the part of a joint tortfeasor contributing to the injury may constitute active negligence precluding his recovery of indemnity where he is under an affirmative duty to act. *Bernstein v. El Mar Painting and Decorating Co.*, 13 N.Y.2d 1053, 245 N.Y.S.2d 772, 195 N.E.2d 456, and 41 Am.Jur.2d, *Indemnity*, § 21." Under these circumstances, the jury may have found that there was an affirmative duty which Architect failed to comply with in submitting the roof's plans to Authority.

■ In addition, there is evidence in the record that there were inadequate operating instructions provided to Authority for the operation of the Dome. While there was a report entitled "Dome Operation Procedure" prepared by the Weiner Company which was obtained by Authority and paid for by Authority, there is evidence in the record that the report itself was not adequate to properly advise Authority as to the operating procedure. There is evidence that it is generally an architect's obligation to obtain that information from the contractors. In a case of this nature where there is an overall operation need which must be developed, such should have been done and was not done by Architect. Thus, again, there is evidence in the record that Architect affirmatively failed to carry out its obligations under the contract with Authority.

■ It is Architect's position that it did not have a duty to review and approve Engineer's plans because Architect did not have the expertise to do so, since the air supported roof was unique. This position is contrary to the contract between Architect and Authority. Architect could hire specialists "to evaluate and study special considerations of the project," but the ultimate responsibility was upon Architect to design and submit plans. If Architect felt it did not have the expertise in this area, it had three choices: one, withdraw as the architect; two, obtain additional expertise from other sources to check the quality of Engineer's preparations; or three, notify Authority of the fact that it did not have sufficient expertise and obtain appropriate waivers as available, or as Architect felt necessary.

Throughout its briefs, Architect asserts that it was continuing with the project to "protect its reputation and choose to try to make the best of a bad situation, rather than withdraw from the project." If Architect did not feel it had the expertise to properly prepare and submit plans or to adequately and sufficiently review the plans of Engineer, it had a duty to withdraw. By remaining on the project, Architect held itself out as having the expertise, or the ability to obtain sufficient expertise, to submit proper plans and specifications to Authority. Indeed, recognizing its limitations, Architect had a higher duty to more scrupulously review the plans of Engineer because of its limited expertise. Upon accepting this difficult situation, they are no less held to an appropriate architectural standard.

It is, therefore, the opinion of this court that there was evidence in the record which would support a jury denying indemnity to Architect from Engineer.

### III.

DID THE TRIAL COURT ERR IN DENYING THE ARCHITECT'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT ON ESTOPPEL?

Architect moved for directed verdict at the close of the evidence based upon estoppel, as well as other grounds. However, the motion must be preserved after the verdict is rendered by a motion for judgment notwithstanding the verdict as well as requesting a directed verdict in the movant's favor. Architect filed its motion for judgment notwithstanding only on the issue of indemnity.

To be proper, the motion must be raised, not only at the close of evidence before the verdict, but also after the verdict, before appellate review. In essence, the trial court is deemed to have reserved its decision on the motion until after receiving the verdict; otherwise, the trial court has not finally ruled on the motion. It may do so only upon a timely motion which was not made here by Architect.

Only if a miscarriage of justice will occur or plain error is present may the court entertain such motion despite its improper nature. *Limmer v. Westegaard*, 251 N.W.2d 676, 680–81 (S.D.1977), SDCL 15–6–50(b). Such motion here is not properly before this court and is, therefore, denied.

### CONCLUSION

The trial court did not err in denying, 1) Authority's motion for prejudgment interest; 2) Architect's motion for indemnity from Engineer; and 3) Architect's motion for judgment notwithstanding on estoppel was not properly before the court and denial of the motion was not erroneous. We affirm.

FOSHEIM, Retired J., concurs.

HENDERSON, J., concurs specially.

MORGAN, and SABERS, JJ., concur in part and dissent in part.

TICE, Circuit Judge, sitting for WUEST, C.J., disqualified.

MILLER, J., not having been a member of the court at the time this case was submitted to the court, did not participate.

HENDERSON, Justice (concurring specially).

Beginning with my special writing in *Northwestern Eng'r v. Thunderbolt Enterprises*, 301 N.W.2d 421, 424 (S.D.1981) (Henderson, J., concurring in part, dissenting in part), through my most recent dissent in *Hageman v. Vander Vorste*, 403 N.W.2d 420, 424 (S.D.1987), I have consistently taken a position on the determination of prejudgment interest. Two of my writings have been majority decisions involving this legal subject, namely, *Hanson v. Funk Seeds Int'l*, 373 N.W.2d 30 (S.D.1985), and *Meyer v. Dixon*, 369 N.W.2d 658 (S.D. 1985).

Throughout my various writings, as the storm on the sea of prejudgment interest has raged, I have tried to grasp the rudder of *Beka v. Lithium Corp. of America*, 77 S.D. 370, 375, 92 N.W.2d 156, 159–60 (1958), hoping I could come safely to shore.

Circuit Judge Merton Tice's scholarly treatise is to be admired, now tendered as the majority opinion, which I join. However, therein contained are references to certain cases in this Court—some reviewed—some criticized—some obliquely critiqued—and thus it is necessary to, at least, mention my previous navigation on the prejudgment waters. This special concurrence, I vouchsafe unto myself, that my previous writings and positions on prejudgment interest be cumulatively understood; and, further, because Judge Tice's criticism of inconsistency might very well strike an undeserving target. Needless to say, prejudgment interest has occupied an inordinate amount of my time in writing majority opinions, researching, authoring minority opinions, and attempting to distinguish the differences in cases. It is not an easy task.

Let it be understood, I have no deep conceptual difference with Judge Tice's basic mooring of the affirmance of the Honorable Circuit Court Judge E.W. Hertz. In fact, the precise question, as Judge Tice instructs us, has never precisely been before us. His majority opinion, which I take and understand to be, is simply that a defendant cannot pay over damages to a plaintiff until a jury sets the proportionate

fault in a jury trial involving contributory negligence because he, the defendant, cannot, with any degree of certainty, know the amount of damages which he would owe.[*]

*Beka*, cited in the majority opinion, is the beacon light to avoid going upon the shoals. Judge Tice's writing is anchored on *State v. Ed Cox & Son*, 81 S.D. 165, 132 N.W.2d 282 (1965), and *Beka*, 77 S.D. 370, 92 N.W.2d 156. This author, on behalf of the majority in *Hanson*, 373 N.W.2d at 36, likewise bottomed his writing on *Ed Cox & Son* and *Beka*. In *Hanson*, 373 N.W.2d at 36, we wrote:

> To be awarded prejudgment interest under this statute, the exact amount of damages must be known or readily ascertainable. *State v. Ed Cox & Son*, 81 S.D. 165, 180, 132 N.W.2d 282, 290–91 (1965); *Beka v. Lithium Corp. of America*, 77 S.D. 370, 375, 92 N.W.2d 156, 160 (1958). Prejudgment interest is not to be awarded if the damages are uncertain until determined by the trier of fact. *Arcon Constr. Co. v. S.D. Cement Plant*, 349 N.W.2d 407, 416 (S.D.1984). "Thus, the test for awarding interest is not whether liability was clear, but whether (assuming liability) the damages were reasonably ascertainable by reference to prevailing markets." *Cole v. Melvin*, 441 F.Supp. 193, 210 (D.S.D. 1977).

Lawyers advocate. Judges interpret and decide. Juries find facts. We, in the judiciary, owe a duty to honor the jury's findings, absent some great substantive legal error, jury tampering, or highly improper conduct of the jury or outside forces (extraneous forces) brought to bear upon the jury which alters the quest for truth. The jury, in this case, found Authority partially responsible for its losses. Suffice it to say, defendant could not, with any degree of certainty, tender an amount of damage to plaintiff. There was no way possible for the defendant to reasonably know what percent of fault a jury would find.

An eminent legal authority makes this general observation about prejudgment interest: "Actually, the decisions have been moving toward a greater willingness to award such interest for a long time, but this very movement has left a certain amount of conflict in the cases, and this, together with the influence of local statutes, makes it impossible to state any single rule or set of rules with accuracy." D. Dobbs, *Handbook on the Law of Remedies* § 3.5, at 165 (1973). If this Court has been caught up with confusion, it is not alone in the jurisdictions of this Union. It should not bear the brunt of deep censure. Courts throughout the land are struggling with prejudgment interest. Court declarations on this subject have been an academic pilgrimage. Each particular set of facts seems to create a new hazard. This great concern over prejudgment interest has mushroomed due to higher interest rates, foreclosures, bankruptcies, and general economic conditions—not to mention an increase of easy credit and dependency upon credit rather than currency of the Realm. Prejudgment interest is unascertainable in cases where comparative fault of the parties must be determined by a jury. *See First Nat'l Bank v. Kehn Ranch*, 394 N.W.2d 709, 717 (S.D.1986); *Hanson*, 373 N.W.2d at 36; *Arcon Constr. Co. v. South Dakota Cement Plant*, 349 N.W.2d 407, 416 (S.D.1984). *Hageman v. Vander Vorste*, 403 N.W.2d 420, 424 (S.D.1987) (Henderson, J., dissenting), and *Amert v. Ziebarth Constr. Co.*, 400 N.W.2d 888, 892 (S.D.1987) (Henderson, J., dissenting), are cases wherein I tried to maintain my core thoughts on prejudgment interest. Hopefully, in both of those dissents, the expressions followed consistently with my majority writings in this Court; and I believe them to be conceptually in step with that which is accomplished by the majority decision herein. In my dissent in *Amert*, 400 N.W.2d at 892, which I spiritually followed in my dissent in *Hageman*, I camped down on the premise that the teaching of *Beka*

---

* Compare this basic platform of thought with my two most recent minority writings in *Hageman v. Vander Vorste*, 403 N.W.2d 420, 424 (S.D. 1987) (Henderson, J., dissenting), and *Amert v.*

*Ziebarth Constr. Co.*, 400 N.W.2d 888, 892 (S.D. 1987) (Henderson, J., dissenting), amplified below.

instructed us that the defendant-Ziebarth should not be charged with prejudgment interest because it, as a debtor, could not know or reasonably ascertain the exact sum owing. In support, I cited *Hanson,* 373 N.W.2d at 36, *Meyer,* 369 N.W.2d at 659, and *Subsurfco, Inc. v. B–Y Water Dist.,* 369 N.W.2d 129, 131 (S.D.1985). *Amert,* 400 N.W.2d at 893. In quoting *Beka,* 77 S.D. at 375, 92 N.W.2d at 160, I tethered to this settled law: " 'When the exact sum of the indebtedness is known or can be readily ascertained the reason for the denial of interest does not exist.' " *Amert,* 400 N.W.2d at 893. In *Hageman,* 403 N.W.2d at 424, as recent as April of this year, I hinged my dissent on language I have quoted in *Amert,* 400 N.W.2d at 892. In *Hageman,* I dissented from the majority opinion because I believed it was not " 'clear that the plaintiff is entitled to recover a sum certain, or that the damages sought are capable of being made certain by calculation....' " 403 N.W.2d at 425 (quoting *Amert,* 400 N.W.2d at 892) (Henderson, J., dissenting). Thus, where a jury is setting the proportionate fault in a jury trial, a defendant cannot pay over damages to a plaintiff until the jury sets the proportionate fault, such as we have here, and the defendant cannot, with any degree of certainty, know the amount of damages which he would owe. Basic is the rationale of *Beka,* 77 S.D. at 375, 92 N.W.2d at 159–60, which I quoted in my *Hageman* dissent, 403 N.W.2d at 424: " 'The reason for denying interest on a claim is that where the person liable does not know what sum he owes, he cannot be in default for not paying.' " Paramount in out thinking must be certainty vis-á-vis uncertainty. If it is not certain, it must be made capable of certainty by calculation and it must also *vest* as of a *particular day.* Master that, in the final analysis, and your ship will come safely to port.

SABERS, Justice (concurring in part and dissenting in part).

I agree with this opinion in all respects except one. I would reverse the trial court on its denial of prejudgment interest because these damages were certain, or capable of being made certain by calculation by reference to prevailing markets for labor and materials. Under SDCL 21–1–11, the plaintiff "is entitled," and the right to recover was vested in the plaintiff on a particular date, i.e., the date the repair costs were fixed.

The fact that the plaintiff did not treat these damages as certain until late in the game is relevant, but not determinative. Likewise, the fact that the jury verdict did not treat them as such is not the issue under the statute. The right to prejudgment interest under SDCL 21–1–11 is not determined by the amount claimed in the complaint, the amended complaint, or even the amount determined in the verdict. It is a question of whether the proof reflects the elements of SDCL 21–1–11. If the proof does, then the court should mathematically compute the prejudgment interest.

Here, prejudgment interest was required because it was certain or capable of being made certain by calculation and the right to recover was vested in the plaintiff on a particular date. Interest is allowed on damages if there exists established or reasonably ascertainable market prices or values on the subject matter, by reference to which the amount due may be determined by computation. *Amert v. Ziebarth Constr. Co.,* 400 N.W.2d 888 (S.D.1987); *Barton Masonry, Inc. v. Varilek,* 375 N.W.2d 200 (S.D.1985); *Dougherty v. Beckman,* 347 N.W.2d 587 (S.D.1984); *Beka v. Lithium Corp. of America,* 77 S.D. 370, 92 N.W.2d 156 (1958). Where the amount sought, even though unliquidated, is based upon the readily ascertainable value of services or property, the general rule is to allow interest in the absence of strong equities to the contrary. *Amert, supra; Aetna Casualty and Surety Co. v. United States,* 365 F.2d 997 (8th Cir.1966). Prejudgment interest should be allowed even where there is an offset, counterclaim or claim of contributory negligence. I submit this is the clear intent of SDCL 21–1–11 for claims arising from contract, such as we have here. SDCL 21–1–11 does *not* say that every person is entitled to prejudgment interest, *unless* there is an offset,

counterclaim or claim of contributory negligence. The statute specifies two, and only two, exceptions, i.e., where debtor prevented by 1) law, or 2) creditor from paying the debt.

The majority opinion purports to deny prejudgment interest because a "contributory negligence" claim "makes it impossible for a defendant to reasonably know what it should pay a plaintiff. As stated in *Amert,* the defendant should not be able to avail himself of this argument unless he in fact has tendered payment or made an offer of payment. The language of the statute provides, "except during such time as the debtor is prevented by law, or by the act of the creditor, from paying the debt." In this case, the debtor does not even claim that he was prevented by law, or by the act of the creditor, from paying the debt. In fact, he has continually and vigorously persisted in his right to resist the debt. Obviously, a debtor has the right to resist the debt, but in the meantime, he has had the use of the money and should pay interest on the obligation in accordance with SDCL 21-1-11, *Meyer v. Dixon Brothers, Inc.,* 369 N.W.2d 658 (S.D.1985), *Amert, supra,* and others.

The reference in SDCL 21-1-11 is to the right to recover upon a particular day. As soon as damages are certain or capable of being made certain by calculation by reference to prevailing markets for labor and materials, then damages are vested and interest begins to run. Interest should be awarded from the date each item of expense was incurred. The trial court denied prejudgment interest because it believed it could not ascertain a definite date when interest began to accrue. There may have been some difficulty, but it was certainly possible here. The only time there is a tolling of the reasonable period before interest runs is if the debtor tried to pay and the creditor refused to accept. SDCL 21-1-11. As stated above, it is a question of whether the proof reflects the elements of SDCL 21-1-11. If the proof does, and it does in this case, then the court should mathematically compute the prejudgment interest.

In summary, plaintiff sued in contract, and in negligence. Plaintiff's damages are supported in contract, and in negligence. To the extent that the defendant's contributory negligence claim was successful, both damages and prejudgment interest *on those damages* have *already been denied.* To deny prejudgment interest a second time on sustainable damages is contrary to the letter and the spirit of SDCL 21-1-11. Much of this difficulty and fuss would not exist if the prejudgment interest rate were 1) reasonable, and 2) either lower or the same as the post-judgment interest rate. Legislative common sense is lacking where the *pre* judgment interest rate is 3% higher than the *post*-judgment interest. *See* SDCL §§ 54-3-4 and 54-3-5 (prejudgment interest), 54-3-5.1 (post-judgment interest), and 54-3-16 (state interest rates).

I am authorized to state that MORGAN, J., joins in this concurrence in part and dissent in part.